391 S.E.2d 739

Jayne SPAHR, Carolyn Bolyard, Catherine Burke, Karen Huffman and Marilyn Wolfe

v.

The PRESTON COUNTY BOARD OF EDUCATION.

No. 19082.

Supreme Court of Appeals of West Virginia.

March 23, 1990.

Stephen A. Weber, Karen Speidel Rodgers, Kay, Casto, Chaney, Love & Wise, Charleston, for The Preston County Bd. of Educ.

Charles R. Garten, Charleston, for Jayne Spahr, Carolyn Bolyard, Catherine Burke, Karen Huffman, and Marilyn Wolfe.

MILLER, Justice:

The Preston County Board of Education (Board) appeals an order of the Circuit Court of Kanawha County, entered October 5, 1988. In that order, the court awarded the five appellees (the teachers) supplemental and back pay to 1981. On appeal, the Board contends that the court erred in awarding back pay because the teachers failed to invoke the grievance procedure within the time limits mandated by W.Va. Code, 18–29–4(a)(1) (1985). We conclude that the grievance was timely filed.

In 1982, the Board and the West Virginia Education Association (WVEA) entered into an agreement in which the Board promised to pay all vocational education teachers in Preston County, including those teaching business courses, a salary supplement, beginning with the 1982–83 school year. Because of an administrative oversight and unknown to the appellees, three of teachers, i.e., Carolyn Bolyard, Catherine Burke, and Karen Huffman,[1] were not included on the list to receive the supplemental pay, although they taught business courses.

In March, 1986, the teachers heard rumors from their colleagues that the business teachers who taught at the county vocational education center were receiving a pay supplement. On March 6, 1986, in an effort to confirm the truth of these rumors, the teachers wrote to the Superintendent of Schools of Preston County, Elmer Pritt, and inquired about the discrepancies in salaries between themselves and the business teachers who taught at the vocational education center. Having received no response, the teachers wrote a follow-up letter to the superintendent on May 5, 1986. The superintendent again failed to respond.[2]

When the teachers returned to school the following fall, they scheduled a meeting with their WVEA representative, Ed Stephenson. During this meeting, the representative confirmed the teachers' suspicions, and opined that the teachers were also entitled to the salary supplement. On October 3, 1986, within fifteen days of this meeting, the teachers filed a written grievance pursuant to W.Va.Code, 18–29–4(a)(3).

---

1. Jayne Spahr has been employed by the Board since 1984. Marilyn Wolfe, although employed by the Board in 1982, did not start teaching business courses until the 1985–86 school year. The total amount in controversy is approximately $7,000.

2. Although the point is not argued, it would appear that these letters were in substantial compliance with the requirements of the Level I grievance procedure. *See* W.Va.Code, 18–29–4(a)(1). This provision requires the grievant to request an informal conference with his immediate supervisor. *See* note 5, *infra*.

A Level II hearing was held with the superintendent on October 29, 1986. In his opinion dated November 10, 1986, the superintendent found that the teachers were entitled to the salary supplement, and he granted them back pay for the 1986–87 school year. The superintendent refused to give the teachers back pay to 1982, because he found that their grievance was untimely filed for those years.

The teachers appealed the portion of the superintendent's decision refusing to give them back pay to 1982. A Level IV grievance hearing was held on March 17, 1987. In an opinion dated May 5, 1987, the hearing examiner affirmed the superintendent's ruling on this issue. The Circuit Court of Kanawha County reversed the hearing examiner's decision. The court found that the grievance had been timely filed because it filed within "fifteen days of the date on which the event became known to the grievant" and "within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance." Accordingly, the circuit court granted the teachers back pay to 1981.[3]

The parties center the controversy in this case around the application of the time periods for initiating the Level I grievance procedure prescribed in W.Va.Code, 18–29–4(a)(1).[4] This section provides, in pertinent part:

"Before a grievance is filed and within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date on which the event became known to the grievant or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, the grievant or the designated representative shall schedule a conference with the immediate supervisor[.]"[5]

The Board argues that the teachers were aware of the events upon which their grievance was based when they wrote to the

---

3. At the Level IV grievance hearing, the parties stipulated that the vocational education teachers did not begin receiving the pay supplement until the 1982–83 school year. Because the teachers claim that they are entitled to receive the same salary supplement received by the vocational education teachers, it was clearly error for the circuit court to grant them back pay to 1981. Furthermore, the teachers who teach vocational subjects on a part-time basis should receive a prorated amount of the supplement in direct proportion to the time they teach business classes.

4. An unaddressed issue is that the initial grievance was filed at Level II with the county school superintendent and not at Level I with the immediate supervisor. The teachers' filing was not challenged, and the Board apparently assumed that an initial filing at Level II is controlled by the fifteen-day time limitation prescribed for a Level I grievance filing. We recognize that W.Va.Code, 18–29–3(c) (1985), allows the grievance to be filed at a higher level if this level is "vested with authority to grant the requested relief," and the lower administrative level agrees in writing. Once the parties agree to go to a higher level and conduct a hearing, we do not believe the hearing is void simply because the lower administrative level failed to give written consent. Inasmuch as we have found the fifteen-day period to have been met in this instance, we need not determine whether an initial filing at Level II, which is not objected to, is subject to the time frames set forth under Level I.

5. The entire text of W.Va.Code, 18–29–4(a), provides:

"Level one.

"(1) Before a grievance is filed and within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date on which the event became known to the grievant or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, the grievant or the designated representative shall schedule a conference with the immediate supervisor to discuss the nature of the grievance and the action, redress or other remedy sought.

"The conference with the immediate supervisor concerning the grievance shall be conducted within three days of the request therefor, and any discussion shall be by the grievant in the grievant's own behalf or by both the grievant and the designated representative.

"(2) The immediate supervisor shall respond to the grievance within two days of the conference.

"(3) Within ten days of receipt of the response from the immediate supervisor following the informal conference, a written grievance may be filed with said supervisor by the grievant or the designated representative on a form furnished by the employer or agent.

"(4) The immediate supervisor shall state the decision to such filed grievance within five days after the grievance is filed."

superintendent on March 6 and May 5, 1986, and that as a result, the grievance was not timely filed. The Board also contends that the circuit court erroneously held that the grievance was filed "within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance." The teachers counter that they did not have actual knowledge of the salary discrepancies until they met with their WVEA representative. The parties agree that the grievance was filed within fifteen days of this meeting.

■ W.Va.Code, 18–29–4(a)(1), contains a discovery rule exception to the time limits for instituting a grievance. Under this exception, the time in which to invoke the grievance procedure does not begin to run until the grievant knows of the facts giving rise to a grievance. *Accord Department of Public Health of San Francisco v. Service Employees Int'l Union Local 790*, 215 Cal.App.3d 429, 263 Cal.Rptr. 711 (1989).

Other jurisdictions that do not have an express discovery rule exception to the time limits in their administrative procedures have created one. In *Brown v. Public Employment Relations Bd.*, 345 N.W.2d 88 (Iowa 1984), the Iowa Supreme Court addressed the effect of a ninety-day time limitation for filing a complaint under the Iowa Public Employment Relations Act. Although this administrative statute did not contain an express discovery rule exception for filing a complaint, the court concluded that because it had recognized such an exception in other types of cases,[6] it would find such an exception here. The Iowa Supreme Court explained: "Under this exception Brown's complaint will therefore be considered timely if she establishes factually that she neither knew nor reasonably should have known until after April 28, 1980 that her seniority status had been changed by the midterm modification agreement." 345 N.W.2d at 96. *Accord Wapella Educ. Ass'n v. Illinois Labor Relations Bd.*, 177 Ill.App.3d 153, 126 Ill.Dec. 532, 531 N.E.2d 1371 (1988).

■ In this case, the teachers' initial letters to the superintendent cannot be characterized as demonstrating actual knowledge of the facts constituting their grievance. The teachers did not know of their entitlement to the supplement until they met with the WVEA representative. Consequently, we find that the grievance was timely filed.

■ Moreover, we believe that when the superintendent found the filing timely for the 1986–87 school year, the grievance was timely for the preceding years. The language in W.Va.Code, 18–29–4(a)(1), providing for "fifteen days of the date on which the event became known" is designed to cover this type of situation. Once the event giving rise to the grievance became known to the teachers, they were not precluded from claiming more than one year. A grievance can extend to prior years because the discovery rule exception, in effect, tolls the limitation as to those prior years.

■ Apparently, the circuit judge also relied on the language in W.Va.Code, 18–29–4(a)(1), permitting a grievance to be filed "within fifteen days of the most recent occurrence of a continuing practice" in order to grant the teachers back pay. We do not believe that the legislature intended this language to cover the present situation. Under the circuit court's interpretation, each new pay check would constitute "the most recent occurrence of a continuing practice," and would permit a grievant to obtain an indefinite accrual of back pay by delaying the filing. The current case, however, involves a single *act*—the inadvertent failure to include the teachers on a list—that caused continuing *damage*, i.e., the wage deficit. Continuing damage ordinarily does not convert an otherwise isolated act into a continuing practice. Once the teachers learned about the pay discrepancy, they had an obligation to initiate the grievance procedure.

---

**6.** We have recognized a discovery rule exception in a variety of cases. *E.g., Harrison v. Seltzer,* 165 W.Va. 366, 268 S.E.2d 312 (1980) (medical malpractice); *Family Sav. and Loan, Inc. v. Cic-* *carello,* 157 W.Va. 983, 207 S.E.2d 157 (1974) (legal malpractice). *See generally Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986).

■ We stress again what we recognized in *Duruttya v. Board of Educ.*, 181 W.Va. 203, 382 S.E.2d 40 (1989)—the grievance procedures set out in W.Va.Code, 18–29–1, *et seq.*, are to be given a flexible interpretation in order to carry out the legislative intent. This intent is expressed in W.Va. Code, 18–29–1 (1985): "This procedure is intended to provide a simple, expeditious and fair process for resolving problems[.]"

In *Duruttya*, the grievant was a tenured teacher who received notice from the superintendent of schools that he was going to be discharged. When Mr. Duruttya filed a grievance challenging the dismissal, he erroneously filed it with the Mingo County Board of Education instead of with the Education Employees Grievance Board. When no action was taken, Mr. Duruttya obtained an attorney, who discovered that the Board claimed the grievance had been filed in the wrong office. The Board further maintained that the grievance was invalid and any attempt to file a new one would be untimely. We refused to allow this technicality to defeat Mr. Duruttya's claim and stated in Syllabus Point 2:

"In the absence of any evidence of bad faith, a grievant who demonstrates substantial compliance with the filing provisions contained in W.Va.Code §§ 18A–2–8 and 18–29–1, *et seq.* (1988) is entitled to the requested hearing."

*See also Independent Fire Co. No. 1 v. West Virginia Human Rights Comm'n,* 180 W.Va. 406, 376 S.E.2d 612 (1988) (waiver and the equitable doctrines of tolling and estoppel are applicable to administrative filing periods); *Harris v. Civil Serv. Comm'n,* 154 W.Va. 705, 178 S.E.2d 842 (1971) (appeals to civil service commission are not barred by laches where there is initial confusion as to civil service cover-

age, and time limitations begin when the coverage question is resolved).

We do not believe that the legislature intended the grievance process to be a procedural quagmire where the merits of the cases are forgotten. In many instances, the grievant will not have a lawyer; therefore, the process should remain relatively simple.

■ The Board further argues that the teacher's grievance is barred by laches. In support of this contention, the Board cites *Maynard v. Board of Educ.*, 178 W.Va. 53, 357 S.E.2d 246 (1987). In 1984, the Wayne County school service personnel filed suit against the Wayne County Board of Education to obtain proceeds from a special levy, which became effective on July 1, 1974. The service personnel claimed that the county had improperly applied part of the levy monies. We held that the service personnel's claim was barred by laches because they had failed to exercise due diligence in filing a claim which had been known to them for several years. Syllabus Point 4 of *Caplan v. Shaw*, 126 W.Va. 676, 30 S.E.2d 132 (1944), states this traditional point:

" 'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that a party has waived his rights.' *Bank of Marlinton v. McLaughlin,* 123 W.Va. 608, 17 S.E.2d 213 [ (1941) ]."

Here, however, the teachers did not have knowledge of their rights, and, thus, *Maynard* is not controlling.[7]

For the foregoing reasons, we conclude that the grievance was timely filed. The judgment of the circuit court is affirmed except as to its award of back pay to the

---

7. We also reject the Board's contention that because one of the teachers, Karen Huffman, did not appear at the Level IV grievance hearing, she is not entitled to back pay. Ms. Huffman was represented at the Level II grievance hearing and was awarded back pay for the 1986–87 school year. The only issue at the Level IV grievance hearing was a legal one, i.e., whether the teachers should receive back pay to the 1982–83 school year.

We decline the teachers' cross-assignment of error requesting prejudgment interest under the

principles announced in *Weimer–Godwin v. Board of Educ.,* 179 W.Va. 423, 369 S.E.2d 726 (1988). In *Weimer–Godwin,* the school board violated W.Va.Code, 18A–4–5a (1984), which requires uniformity in compensation for "all persons performing like assignments and duties." Here, the teachers did not receive the supplement because of an inadvertent oversight by both the Board and the WVEA.

1981–82 school year. As we have already indicated, the back pay should only extend to the 1982–83 school year and should also be subject to other adjustments. *See* note 3, *supra*. To this extent, the judgment is reversed and remanded.

Affirmed, in part, reversed, in part, and remanded.