484 S.E.2d 640

**Taunia HALE, Petitioner below, Appellant,**

v.

**MINGO COUNTY BOARD OF EDUCATION, Respondent below, Appellee.**

No. 23748.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 1997.

Decided March 21, 1997.

Denise Smith–Kastick, Mike Kelly, Charleston, for Petitioner below, Appellant.

W. Graham Smith, Jr., Williamson, for Respondent below, Appellee.

STARCHER, Justice:

This is an appeal of a Kanawha County Circuit Court decision that upheld the ruling of an administrative law judge ("ALJ") of the West Virginia Education and State Employees Grievance Board ("the Grievance Board") in a level four school employee grievance proceeding.

The ALJ ruled as a matter of law that a school employee (the appellant Taunia Hale) who intervened in a grievance proceeding could not assert an affirmative claim of entitlement to one of the two jobs which were the subject of the grievance proceeding. Consequently the ALJ dismissed Ms. Hale as a party to the grievance proceeding. We hold that Ms. Hale should not have been dismissed, and she should have been permitted to assert her claim in the grievance proceeding. Therefore, we reverse the decision of the circuit court and remand the case for further proceedings by the Grievance Board to consider the merits of Ms. Hale's claim.

## I.

### Facts and Background

Ms. Hale was employed as a full-time regular secretary for the appellee Mingo County Board of Education ("the Board of Education") until she was laid off due to a reduction in force at the end of the 1994–95 school year and placed on preferred recall status. Another secretary, Paula Taylor Hurley, was also laid off at the same time. In April or early May of 1995, Ms. Hurley filed a griev-

ance[1] with the Board of Education asserting that she should not have been laid off because she had more seniority than the two secretaries who had been retained, Pamela Varney and Betty Sammons.

Appellant Taunia Hale intervened in Ms. Hurley's grievance proceeding. Ms. Hale asserted that she also had more seniority than the retained secretaries. The retained secretaries also intervened, seeking to defend their positions. Thus, all four parties with an asserted right to or interest in the two secretarial positions were parties to the grievance proceeding.

A level two hearing was held on May 3, 1995 before an assistant school superintendent. Ms. Hale was ill and did not attend the hearing, but a non-lawyer representative appeared on her behalf. The evidence included testimony that Ms. Hale had more seniority than the other three parties to the grievance proceeding. Ms. Hale's employment records were made a part of the record. On May 11, 1995, the assistant superintendent upheld the Board's decision to retain Ms. Varney and Ms. Sammons.

After all four parties waived a level three hearing, the grievance advanced to a level four hearing before a Grievance Board administrative law judge, held on July 20, 1995. Because the ALJ inadvertently failed to notify Ms. Hale or her representative of the hearing date, neither attended the hearing. Nevertheless, an evidentiary hearing was held and testimony was taken, with the proviso that Ms. Hale and her representative would be contacted by the ALJ and afforded the opportunity to reconvene the hearing if necessary to submit additional evidence.

At this level four hearing the employment records of the three other employees were admitted into the record, but because Ms. Hale and her representative were not present, her employment records were not placed into the administrative record. However, Ms. Hale's representative subsequently filed proposed findings of fact and conclusions of law to the effect that Ms. Hale had more seniority than the other three parties to the grievance proceeding.

For reasons which are not clear from the record, the hearing was never reconvened to take Ms. Hale's testimony or admit her records into evidence. Instead, on September 28, 1995 the ALJ issued an opinion which dismissed Ms. Hale from the case without reaching the merits of her seniority claim.

The ALJ's dismissal of Ms. Hale's claim was *sua sponte* and based on the reasoning that intervention may be used as a "shield" to defend against a claim, but not as a "sword" to achieve a remedy which could only result from the filing of a separate grievance.[2] No party to the grievance process had raised an objection to Ms. Hale's seeking a determination that one of the jobs should have been awarded to her because of her greater seniority.

After dismissing Ms. Hale from the case, the ALJ's opinion went on to decide the merits of the grievance as to the remaining parties. The ALJ concluded that the Board had failed to follow seniority properly when reducing its secretarial staff. The ALJ determined that Ms. Hurley was more senior than Ms. Varney and Ms. Sammons and should be reinstated.

1. Public education employee grievances are governed by *W.Va.Code*, 18–29–1 [1992] *et seq.*, which establishes a four-level hearing process.

2. The ALJ's decision stated in pertinent part:
Ms. Hale's position that she is more senior than the other three employees, and therefore, she should be reinstated to regular employment, is not consistent with her status in this action. As an intervenor, Ms. Hale may only attempt to protect the rights she held at the time of filing of the grievance. At that time, her only recognized rights would be related to her recall to employment pursuant to *Code* § 19A–4–8b. An intervenor may only defend against an action brought by a grievant who is asserting rights in opposition to him or her. Intervention may be used as a "shield" to defend against a claim but not as a "sword" to achieve a remedy which could only result from the filing of a separate grievance. An intervenor may not raise new issues in a grievance or broaden the scope of the claim. An intervenor may not raise new issues or pursue issues not raised directly by the complainant. *See, Brennen* [sic] *v. United Steelworkers of America, AFL–CIO–CLC,* 501 F.Supp. 912 (D.C.Pa.), *aff'd in part, rev'd in part on other grds.,* 666 F.2d 845, *cert denied,* 459 U.S. 823, 103 S.Ct. 52, 74 L.Ed.2d 58. Ms. Hale's request for relief is not cognizable in the instant case.

Ms. Hale appealed the ALJ's decision to the Circuit Court of Kanawha County. The circuit judge adopted the legal reasoning of the ALJ and affirmed the decision dismissing Ms. Hale as a party to the grievance. This appeal followed.

## II.

### Standard of Review

■ The circuit court's decision affirming the ALJ's dismissal order was based solely on an issue of law and the interpretation of a statute. We therefore review the decision of the circuit court *de novo*. *See Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

## III.

### Discussion

#### A.

### "Shield vs. Sword"

■ *W.Va.Code*, 18–29–1 [1992] states the Legislature's intent that the grievance procedure set out therein be a "simple, expeditious and fair process for resolving problems...." *Vest v. Board of Educ. of County of Nicholas*, 193 W.Va. 222, 224, 455 S.E.2d 781, 783 (1995); *Spahr v. Preston County Board of Education*, 182 W.Va. 726, 730, 391 S.E.2d 739, 743 (1990); *Duruttya v. Mingo County Board of Education*, 181 W.Va. 203, 205, 382 S.E.2d 40, 42 (1989).[3]

In *Spahr*, this Court "stress[ed] again" that the grievance procedures under *W.Va. Code*, 18–29–1 [1992] *et seq.* must be "be given a *flexible interpretation* in order to carry out the legislative intent ... [that] the

grievance process ... [not] be a procedural quagmire where the merits of the cases are forgotten." (emphasis added). We stated that the grievance process must remain "relatively simple" because "in many instances, the grievant will not have a lawyer...." *Spahr*, 182 W.Va. at 730, 391 S.E.2d at 743.

Having stated these fundamental principles which guide our approach to the grievance process set out in *W.Va.Code*, 18–29–1 [1992] *et seq.*, we turn to the more specific issue of what claims may be made by an intervenor in a grievance proceeding.

*W.Va.Code*, 18–29–3(u) [1992][4] provides that:

Upon a timely request, any employee shall be allowed to intervene and become a party to a grievance at any level when that employee claims that the disposition of the action may substantially and adversely [sic] affect his or her rights or property and that his or her interest is not adequately represented by the existing parties.

Although *W.Va.Code*, 18–29–3(u) [1992] states what an employee must assert to be entitled to intervene in a grievance proceeding, the statute is silent as to what relief the intervenor may seek or obtain in the proceeding once having intervened.

■ In dismissing Ms. Hale as a party to the grievance proceeding, the ALJ applied the following rule, which is quoted from the decision:

Intervention may be used as a "shield" to defend against a claim but not as a "sword" to achieve a remedy which could only result from the filing of a separate grievance.

---

3. In *Duruttya*, we held that the erroneous filing of a grievance in the wrong office would not bar the consideration of an employee's claim. Syllabus Point 2 of *Duruttya* stated: "In the absence of any evidence of bad faith, a grievant who demonstrates substantial compliance with the filing provisions contained in W.Va.Code §§ 18A–2–8 and 18–29–1, *et seq.* (1988) is entitled to the requested hearing." *Duruttya*, 181 W.Va. 203, 382 S.E.2d 40 (1989).

4. The parties to the instant case have not cited us to any previous discussion by this Court of this 1992 statutory provision. In *Copley v. Mingo County Bd. of Educ.*, 195 W.Va. 480, 466 S.E.2d 139 (1995), at notes 2, 4, and 14, we noted the

addition of this language explicitly authorizing intervention in grievance proceedings; however, the underlying grievance proceedings in *Copley* occurred prior to the enactment of *W. Va.Code* 18–29–3(u) [1992]. In *Copley*, an employee who was replaced as a result of another employee's successful grievance was allowed to appeal the determination in the grievance to the circuit court. The facts in *Copley* suggest that prior to the enactment of *W. Va.Code* 18–29–3(u) [1992], some sort of "intervention" in grievance proceedings was occurring, in at least some cases, by employees who were affected by the proceedings.

(*See supra,* note 2 for the full text of the pertinent part of the ALJ's decision.)

We have not been cited to nor has our research located any West Virginia authority for this "shield-yes/sword-no" rule, or for the rule's application to an employee grievance proceeding. The ALJ cited as his sole authority for the rule the case of *Brennan v. United Steelworkers of America, AFL–CIO–CLC,* 501 F.Supp. 912 (W.D.Pa.1981), *aff'd in part, rev'd in part on other grds.,* 666 F.2d 845 (3d Cir.1981), *cert. denied,* 459 U.S. 823, 103 S.Ct. 52, 74 L.Ed.2d 58 (1982). We find reliance on *Brennan* to be misplaced.

In *Brennan,* the attorneys for an intervenor in a case brought under Title IV of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. 481 *et seq.,* sought an award of attorney fees. In denying the application, the district court noted that under Title IV of the LMRDA the intervenors were not able to add additional claims to the complaint filed by the U.S. Secretary of Labor and thus could not be awarded fees incurred in bringing those issues before the court. As authority for such restriction on the intervenors, the court in *Brennan* quoted Justice Marshall's majority opinion in *Trbovich v. United Mine Workers, et al.,* 404 U.S. 528, 537, 92 S.Ct. 630, 635, 30 L.Ed.2d 686, 694 (1972), which found that union members cannot add claims to a case if the claims were previously rejected by the Secretary:

> These are claims that the Secretary has presumably determined to be without merit. Hence to require the union to respond to these claims would be to circumvent the screening function assigned by statute to the Secretary.... Accordingly, we hold that in a post-election enforcement suit, Title IV imposes no bar to intervention by a union member, so long as that intervention is limited to the claims of illegality presented by the Secretary's complaint.

*Brennan,* 501 F.Supp. at 920, *quoting Trbovich, supra.*

In Ms. Hale's case there is no codified screening function assigned to any third party by the grievance statute, and Ms. Hale was not intervening for the purpose of litigating claims that had been previously rejected by an arm of the executive branch granted exclusive jurisdiction to initiate enforcement proceedings. The complex fact scenario and LMRDA legal requirements outlined in *Brennan* are wholly dissimilar to the present case. Thus, *Brennan* has no controlling weight with respect to proceedings under *W.Va.Code,* 18–29–1 [1992] *et seq.*

The appellee Board of Education agrees with the "shield-yes/sword-no" rule applied by the ALJ. The Board makes the argument (which it did not make before the ALJ) that if Ms. Hale wanted to assert a claim to one of the jobs being filled by the retained secretaries, Ms. Hale was required to bring her "affirmative" claim by filing a separate grievance—unlike the retained secretaries, who the Board concedes properly intervened "defensively" to try to protect their existing jobs.

However, if Ms. Hale were required to file a separate grievance, her seniority rights *vis-a-vis* the other three parties would apparently have to be determined in a separate proceeding—unless all parties consented to consolidation of the grievances pursuant to *W.Va.Code,* 18–29–3(e) [1992].[5]

In cases like the one we are considering, where there are a number of parties contending for a fewer number of positions, the principle of judicial economy strongly argues for the use of rules that encourage all of the contestants for the available positions to wield their full panoply of shields and swords at the same time and in the same arena. However, the rule applied by the ALJ would tend to promote separate, piecemeal, and duplicative proceedings, and would increase the potential for inconsistent results or unfairness.

Additionally, the "shield/sword" distinction could easily prove to be a trap for employees. This somewhat elusive and lawyerly distinction would not be clearly discerned or appreciated by non-lawyer employee grievants or their representatives. A grievant whose

---

**5.** *W.Va.Code* 18–29–3(e) [1992] states: "Grievances may be consolidated at any level by agreement of all parties."

"sword" claim was innocently but erroneously treated as a "shield" claim could lose the right to assert the claim—just as Ms. Hale did. And what of employees with both "shield" and "sword" claims? Should they be required to both intervene *and* file a separate grievance?

Based on these serious problems that we perceive with the rule applied by the ALJ, we conclude that the blanket application of the "shield-yes/sword-no" rule to grievance proceedings under *W.Va.Code*, 18–29–1[1992] *et seq.* would contradict the legislative directive that the grievance procedure be a "simple, expeditious and fair process for resolving problems ...," *W.Va.Code*, 18–29–1[1992], and would contradict *Spahr's* requirement that participants in the grievance process not have to navigate through a procedural quagmire. *Cf. Paxton v. Crabtree*, 184 W.Va. 237, 241, 400 S.E.2d 245, 249 (1990) ("administrative proceedings should not be constrained by undue technicalities").

Therefore we hold that an intervenor in a grievance proceeding under *W.Va.Code*, 18–29–1[1992] *et seq.* may make affirmative claims for relief as well as asserting defensive claims.

■ We recognize that in some circumstances allowing certain claims by intervenors may be inappropriate. We do not in

this opinion address with conclusive specificity the question of what limitations may properly be placed upon claims made by intervenors in grievance proceedings under *W.Va. Code*, 18–29–1 [1992], *et seq.*[6] However, for the guidance of tribunals, we hold generally that a hearing examiner in a grievance proceeding under *W.Va.Code*, 18–29–1 [1992] *et seq.* may for good cause and in the cautious exercise of the examiner's discretion limit the claims which an intervenor may make.[7] However, such limitations must be imposed in a fashion that will not unfairly prejudice the rights of the intervenor to have a proper determination made on the merits of his or her claims.

Because the ALJ's dismissal of Ms. Hale was premised upon a rule which we find should not be applied to grievance proceedings under *W.Va.Code*, 18–29–1[1992] *et seq.*, the decision of the Circuit Court of Kanawha County upholding the ALJ's decision must be reversed.[8]

### B.

### *Timeliness*

The appellee Board of Education contends that Ms. Hale's intervention was not made within the fifteen-day time period set forth in

**6.** We observe that *W.Va.Code*, 18–29–3(u) [1992] is similar to the language of *West Virginia Rule of Civil Procedure* 24 and *Federal Rule of Civil Procedure* 24, which allow a person to intervene of right in a civil action:

[W]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede ... [the applicant's] ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Because of this similarity, the jurisprudence applying and interpreting *West Virginia Rule of Civil Procedure* 24 and *Federal Rule of Civil Procedure* 24 may be helpful on the issue of what claims may be made by an intervenor in proceedings arising under *W.Va.Code*, 18–29–1 [1992] *et seq.*, taking into account that grievance proceedings are expressly designed to be simple and flexible, and rules of procedure should be liberally construed and applied to that end. "Rules of practice and procedure are devised to promote

the ends of justice, not to defeat them." *State v. Greene*, 196 W.Va. 500, 473 S.E.2d 921, 927 (1996) (Cleckley, J., concurring), *quoting Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037, 1041 (1941). *But cf.* 7C Wright, Miller and Kane, *Federal Practice and Procedure: Civil*, § 1921 (1986): "[I]t is easier to say what the law ought to be in this area than to assert with confidence what the law is."

**7.** For example, limitation could be appropriate if the claims are remote from the subject of the original grievance, or if addressing the claims may be unduly burdensome, distracting or confusing.

**8.** Even if we were to assume *arguendo* that the ALJ's procedural rule was correct, and that Ms. Hale's making her affirmative claim as an intervenor instead of filing a separate grievance was technically improper, Ms. Hale's actions would nevertheless clearly meet the "substantial compliance" test set out in *Duruttya, supra,* 3. Therefore, under principles of established law, her claim should not have been dismissed.

*W.Va.Code,* 18–29–4(a)(1) [1995] [9]—and that to allow Ms. Hale to assert her claim as an intervenor gives her a time advantage which she would not have if she had been required to file her grievance separately.

■ We agree with the abstract proposition that intervention should not be permitted to unfairly circumvent the time periods applicable to the grievance process. However, we disagree with the appellee Board's contention that this principle requires the affirmance of the ALJ's decision to dismiss Ms. Hale from the grievance proceeding.

■ First, there is no evidentiary support in the record showing that Ms. Hale's intervention, even if considered under the fifteen-day period which the Board references, was untimely. The record is silent as to the date that the challenged postings were made, the date that the original grievance was filed, and the date that Ms. Hale filed her claim as an intervenor. [10]

9. W.Va. *Code,* 18–29–4(a)(1) [1995] states in pertinent part that the time period for filing a grievance is:

> [W]ithin fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date on which the event became known to the grievant or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance....

10. Even if they were in the record, these dates would not alone be necessarily determinative of timeliness. In *Spahr, supra,* we upheld a circuit court's determination that a grievance was timely filed several months after the challenged grievable event because the employees did not initially know of the actual facts relating to their grievance. *Spahr,* 182 W.Va. 726, 391 S.E.2d 739. *Spahr* and *Duruttya, supra* teach that the timeliness of a grievance claim is not necessarily a cut-and-dried issue because a tribunal must apply to the timeliness determination the principles of substantial compliance and flexible interpretation to achieve the legislative intent of a simple and fair grievance process, as free as possible from unreasonable procedural obstacles and traps.

In Ms. Hale's case, the record does reflect that all four parties with claimed interests in the two jobs in question had filed their claims sometime before May 3, 1995. Therefore, it does not appear that there is any basis upon which to suggest that Ms. Hale "slept on her rights" for an appreciable period of time.

Second, the ALJ's decision to dismiss Ms. Hale from the proceeding did not in any part rest on the question of her timeliness in asserting her claim. Neither the Board nor the other parties raised any objection in the grievance proceeding to the timeliness of Ms. Hale's claim; and, Ms. Hale's intervention was determined to be timely at level two. [11] This Court does not ordinarily consider issues not raised in the trial court. *See State v. Greene,* 196 W.Va. 500, 505, 473 S.E.2d 921, 926 (1996) (Cleckley, J., concurring).

Therefore, the Board's contentions of untimeliness do not provide grounds for us to uphold the rulings of the ALJ and the circuit court dismissing Ms. Hale and her claim from the grievance proceeding.

### IV.

### Conclusion

The decision of the Circuit Court of Kanawha County is reversed. This case is remanded to the circuit court, with instructions

11. Additionally, the Board of Education's failure to raise timeliness at the time Ms. Hale intervened and at the level two proceeding may have barred the Board from raising the issue later. *W.Va.Code,* 18–29–3(a) [1992] states in part:

> Any assertion by the employer that the filing of the grievance at level one was untimely must be asserted by the employer on behalf of the employer at or before the level two hearing.

The parties to this appeal have not mentioned this statutory provision; nor does it appear that this Court has discussed it before. We observe that on its face this statutory language appears to bar a timeliness objection if the employer does not assert the alleged untimeliness of a level one grievance filing at least by the time of a level two hearing. In light of our holding today, it seems logical and consistent with the legislative purpose to read this provision, in factually appropriate cases, to apply to claims made by intervenors as well as to claims made by original or initial grievants.

Applied to the facts of this case, such a reading would bar the Board from asserting the alleged untimeliness of Ms. Hale's claims because the Board did not make a timeliness objection to Ms. Hale's claims at or prior to the level two grievance proceeding. However, because the parties did not discuss this issue and because we decide the case on other grounds, we do not decide this question.

to (1) vacate the decision of the Grievance Board insofar as it dismissed Ms. Hale as a party to the grievance; and (2) remand the case to the Grievance Board for proceedings in conformance with this opinion.[12]

Reversed and remanded with directions.

12.  Presumably these proceedings will assure that the relevant evidence and argument for all four employee parties to the grievance proceeding is before the Grievance Board and will resolve the claims of each of the four parties to the grievance, including Ms. Hale's claim to one of the two jobs at issue. Nearly two years have passed without a ruling on the merits of Ms. Hale's claim. This delay has deprived Ms. Hale and the other employees of their right to a timely determination of the issues and has increased the potential liability of the Board of Education (and ultimately, the taxpayers) for back pay and attorney fees. Upon remand, we expect that the circuit court and the Grievance Board will act in an expeditious manner to implement the directives set forth in this opinion.