535 S.E.2d 200

**Stephanie BARTHELEMY and David L. Rogers, Appellants,**

v.

**WEST VIRGINIA DIVISION OF COR-RECTIONS, PRUNTYTOWN COR-RECTIONAL CENTER, Appellee.**

No. 26901.

Supreme Court of Appeals of West Virginia.

Submitted April 18, 2000.

Decided July 12, 2000.

---

8. We decline to address the other issues raised by the appellant.

Basil R. Legg, Jr., Esq., Jonathan Fittro, Esq., Law Offices of Basil R. Legg, Jr., Clarksburg, West Virginia, Attorneys for Appellants.

Darrell V. McGraw, Jr., Esq., Attorney General, Charles Houdyschell, Jr., Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

STARCHER, Justice:

This is an appeal from a June 1, 1999 order of the Circuit Court of Taylor County that denied Stephanie Barthelemy's ("Barthelemy") and David Rogers' ("Rogers") petition for appeal. Barthelemy and Rogers filed a petition for appeal in the circuit court following an order of the West Virginia Education and State Employees Grievance Board ("Board") that denied Barthelemy's and Rogers' consolidated grievances against their employer, the West Virginia Department of Corrections ("DOC"). In their grievances, Barthelemy and Rogers alleged that the DOC had improperly denied them a salary increase. The Board denied the grievances, holding that the grievances had been untimely filed; the Board's decision was not disturbed by the circuit court. Following our review of this matter, we reverse the circuit court, finding that the grievances were timely filed, and remand the case for an evidentiary hearing to determine if Barthelemy and Rogers were improperly denied a salary increase.

## I.

### Facts & Background

Both Barthelemy and Rogers, the appellants, are employees of the DOC, and prior to 1994 each was classified as a Correctional Officer I ("CO–I"). In April of 1994, positions within the DOC were restructured in conjunction with new training requirements. Under the new structure, the DOC required all newly hired CO–I's to enroll in and complete the DOC's Officer Apprentice Program ("OAP") within 2 years of being hired. Upon completion of the program, a CO–I became eligible for promotion to CO–II with an attendant 5 percent salary increase. Officers who were CO–I's in 1994 who had not completed the OAP, but had sufficient seniority, were directly promoted to CO–II and required to complete the OAP within a certain amount of time. The appellants were in this category, were promoted to CO–II's, and were instructed to complete the OAP. They also received a 5 percent salary increase simultaneously with their promotions.

The appellants completed the OAP on July 10, 1998. Each received a letter memoranda from the coordinator of the program congratulating the appellants for successfully completing the program, and informing the appellants that *if* they were due an increase in their salary it would take effect within 30 to 60 days. The appellants believed that because they completed the OAP they were entitled to an additional 5 percent pay raise. The DOC letter memoranda was dated July 10, 1998, but the appellants contend they did not receive it until July 30, 1998. Sixty days from the date on the letter was September 10, 1998; 60 days from the date the appellants claim they received the letter was September 30, 1998.

The appellants were paid on the 15th and 30th of each month. As of September 15, 1998, the appellants had yet to receive a salary increase, nor did they receive an increase on their September 30, 1998 paychecks.

On October 15, 1989, the appellants filed

grievances[1] alleging discrimination based on the DOC's promise of a salary increase and the failure to provide it. They claim that the DOC had increased the salaries of other CO's who successfully completed the OAP. The grievances were filed within 10 business days[2] from the appellants' receipt of their September 30, 1998 paychecks. The grievances were denied at Levels I through III for being filed in an untimely manner. A Level IV grievance hearing was conducted on January 22, 1999 on the grievances, and in an opinion dated March 26, 1999, the hearing examiner for the Board likewise determined

1. The appellants filed their grievances pursuant to *W.Va.Code,* 29–6A–4(1998), which provides, in pertinent part:

    (a) Level one.

    Within ten days following the occurrence of the event upon which the grievance is based, or within ten days of the date on which the event became known to the grievant, or within ten days of the most recent occurrence of a continuing practice giving rise to a grievance, the grievant or the designated representative, or both, may file a written grievance with the immediate supervisor of the grievant. At the request of the grievant or the immediate supervisor, an informal conference shall be held to discuss the grievance within three days of the receipt of the written grievance. The immediate supervisor shall issue a written decision within six days of the receipt of the written grievance. If a grievance alleges discrimination or retaliation by the immediate supervisor of the grievant, the level one filing may be waived by the grievant and the grievance may be initiated at level two with the administrator or his or her designee, within the time limits set forth in this subsection for filing a grievance at level one. A meeting may be held to discuss the issues in dispute, but the meeting is not required.

    (b) Level two.

    Within five days of receiving the decision of the immediate supervisor, the grievant may file a written appeal to the administrator of the grievant's work location, facility, area office, or other appropriate subdivision of the department, board, commission or agency. The administrator or his or her designee shall hold a conference within five days of the receipt of the appeal and issue a written decision upon the appeal within five days of the conference.

    (c) Level three.

    Within five days of receiving the decision of the administrator of the grievant's work location, facility, area office, or other appropriate subdivision of the department, board, commission or agency, the grievant may file a written appeal of the decision with the chief administrator of the grievant's employing department, board, commission or agency. A copy of the appeal and the level two decision shall be served upon the director of the division of personnel by the grievant.

    The chief administrator or his or her designee shall hold a hearing in accordance with section six of this article within seven days of receiving the appeal. The director of the division of personnel or his or her designee may appear at the hearing and submit oral or written evidence upon the matters in the hearing.

    The chief administrator or his or her designee shall issue a written decision affirming, modifying or reversing the level two decision within five days of the hearing.

    (d) Level four.

    (1) If the grievant is not satisfied with the action taken by the chief administrator or his or her designee, within five days of the written decision the grievant may request, in writing, on a form furnished by the employer, that the grievance be submitted to a hearing examiner as provided for in section five of this article. The hearing shall be conducted in accordance with section six of this article within fifteen days following the request for the hearing: Provided, That the hearing may be held within thirty days following the request, or within a time that is mutually agreed upon by the parties, if the hearing examiner gives reasonable cause, in writing, as to the necessity for the delay. A copy of the appeal shall be served by the grievant upon the director of the division of personnel. The director of the division of personnel, or his or her designee, may appear at the hearing and submit oral or written evidence upon the matters in the hearing.

    (2) Within thirty days following the hearing, the hearing examiner shall render a decision in writing to all parties setting forth findings and conclusions on the issues submitted. Subject to the provisions of section seven of this article, the decision of the hearing examiner is final upon the parties and is enforceable in circuit court.

    (e) Expedited grievance process.

    (1) A grievance involving suspension without pay, demotion or dismissal or loss of wages may be initiated at level two with the administrator of the grievant's work location, facility, area office, or other appropriate subdivision of the department, board, commission or agency.

    (2) An employee may grieve a final action of the employer involving a dismissal, demotion or suspension exceeding twenty days directly to the hearing examiner. The expedited grievance shall be in writing and shall be filed within ten days of the date of the final action with the chief administrator and the director of the division of personnel.

2. Under the applicable statute, "days" refer to regular workdays, exclusive of Saturday, Sunday, or official holidays. *W.Va.Code,* 29–6A–2(c)[1988].

that the grievances were untimely filed, and the grievances were dismissed.

The appellants filed a petition for appeal before the Circuit Court of Taylor County, and by order dated June 1, 1999, the petition was denied. This appeal followed.

## II.

### Standard of Review

The standard of review for decisions made by the West Virginia Educational Employees Grievance Board is set forth in *Martin v. Randolph Board of Education*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995), where we stated:

[I]n reviewing an ALJ's decision that was affirmed by the circuit court, this Court accords deference to the findings of fact made below. This Court reviews decisions of the circuit court under the same standard as that by which the circuit reviews the decision of the ALJ. We must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. Further, the ALJ's credibility determinations are binding unless patently without basis in the record. Nonetheless, this Court must determine whether the ALJ's findings were reasoned, *i.e.*, whether he or she considered the relevant factors and explained the facts and policy concerns on which he or she relied, and whether those facts have some basis in the record. We review *de novo* the conclusions of law and application of the law to the facts.

## III.

### Discussion

### A.

### Statute of Limitations

The DOC argues that the appellants did not timely file their grievances; consequent-ly, the grievances were properly dismissed. The appellants disagree; they argue that they did not have actual knowledge of the DOC's failure to grant the expected pay raise until after they received their September 30, 1998 paychecks, and that their grievances were filed within 10 business days of that date.

*W.Va.Code*, 29–6A–4(a)[1998] governs the time limits for most state and county employees (specifically excluding employees of county school boards and other educational institutions)[3] for instituting a grievance, providing that:

Within ten days following the occurrence of the event upon which the grievance is based, or within ten days of the date on which the event became known to the grievant, or within ten days of the most recent occurrence of a continuing practice giving rise to a grievance, the grievant or the designated representative, or both, may file a written grievance with the immediate supervisor of the grievant.

A statute nearly identical to *W.Va.Code*, 29–6A–4(a) is the statute governing grievance procedures for employees of our educational systems. Grievances filed by employees of the various county boards of education and other educational institutions are governed by *W.Va.Code*, 18–29–1 *et seq.*, with time limits for the filing of grievances provided for in *W.Va.Code*, 18–29–4(a)(1)[1995].[4] In applying the time requirements of this statute with respect to educational employees, we have stated:

W.Va.Code, 18–29–4(a)(1)(1985), contains a discovery rule exception to the time limits for instituting a grievance. Under this exception, the time in which to invoke the grievance procedure does not begin to run

---

3. *W.Va.Code*, 29–6A–1[1988] identifies state employees who are included in the grievance procedure, and employees who are excluded.

4. *W.Va.Code*, 18–29–4(a)(1)[1995], provides, in pertinent part:

(1) Before a grievance is filed and within fifteen days following the occurrence of the event upon which the grievance is based, or

within fifteen days of the date on which the event became known to the grievant or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, the grievant ... shall schedule a conference with the immediate supervisor to discuss the nature of the grievance and the action, redress or other remedy sought.

until the grievant knows the facts giving rise to a grievance. Syllabus Point 1, *Spahr v. Preston County Board of Education,* 182 W.Va. 726, 391 S.E.2d 739 (1990).

We have held that the legislative intent for creating grievance procedures is to provide state employees a "simple, expeditious and fair process for resolving problems." Syllabus Point 3, *Spahr v. Preston County Board of Education,* in part, *supra. See also* Syllabus Point 1, *Hale v. Mingo County Board of Education,* 199 W.Va. 387, 484 S.E.2d 640 (1997); *Duruttya v. Board of Education of County of Mingo,* 181 W.Va. 203, 205, 382 S.E.2d 40, 42 (1989). Additionally, we have stated that "[w]e do not believe that the legislature intended the grievance process to be a procedural quagmire where the merits of the cases are forgotten." *Ewing v. Board of Education of the County of Summers,* 202 W.Va. 228, 239, 503 S.E.2d 541, 552 (1998) *quoting Spahr v. Preston County Board of Education,* 182 W.Va. at 730, 391 S.E.2d at 743.

Appellants relied upon the DOC's July 10, 1998 letter memoranda—a letter appellants contend they received on July 30, 1998—to support their contention that they were entitled to a 5 percent salary increase, and that it might take 30 to 60 days before any salary increase would be put in place. The appellants were further advised in the memoranda that they should contact either the Corrections Academy or the appellants' facility business office if questions relating to the pay increase arose.

The appellants also contend that they could not have reasonably known from their September 15, 1998 paychecks that they had not received their salary increases because of the short period of time between the 10th of the month and the 15th; therefore, they should not be held to "10 days" following the receipt of their September 15 paychecks. Appellants argue that they were entitled to file their grievances within 10 working days after they knew that they were not getting a pay raise—that is, 10 working days after they received their September 30 paychecks.

The DOC argues that the 60 days referenced in their memoranda began running on July 10, 1998, and expired on September 10, 1998. The DOC further argues that the appellants should have known from their September 15, 1998 paychecks that their salary had not been increased. Using either date, the grievances were not filed within the required 10 working days.

We are not persuaded by the appellee's argument. No evidence was presented indicating that the appellants knew they had been denied the 5 percent raise until after their September 30, 1998 paychecks; the evidence is to the contrary.

■ Therefore, as we have for educational employees under *W.Va.Code,* 18–29–4(a)(1)[1995], we find that *W.Va.Code,* 29–6A–4(a)[1998] contains a discovery rule exception to the time limits for instituting a grievance. Under this exception, the time in which to invoke the grievance procedure does not begin to run until the grievant knows of the facts giving rise to a grievance.

■ Applying this holding to the facts of this case, the appellants did file their grievance within 10 business days after receipt of their September 30, 1998 paychecks, the time that the appellants first knew of the facts giving rise to a grievance.

## B.

### *Are Appellants Entitled to a 5% Pay Raise?*

The appellants are seeking a 5 percent pay raise because they completed the training provided by the DOC through its Officer Apprentice Program; however, because the appellants' grievances were dismissed on procedural grounds and not on the facts of the case, we cannot address the merits of their claims.

## IV.

### *Conclusion*

Accordingly, we find that the appellants' grievances were timely filed, and we reverse the June 1, 1999 order of the Circuit Court of Taylor County. We further remand this matter to the West Virginia Education and

State Employees Grievance Board with directions to conduct an evidentiary hearing on the merits of the case.

Reversed and Remanded.