## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**John Straley,**
**Petitioner**

**FILED**

**November 16, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 15-1207** (Kanawha County 14-AA-91)

**Putnam County Board of Education,**
**Respondent**

## MEMORANDUM DECISION

Petitioner John Straley appeals the order of the Circuit Court of Kanawha County, entered on November 18, 2015, affirming the decision of the West Virginia Employees Grievance Board ("Grievance Board") entered on July 28, 2014. The Grievance Board dismissed Mr. Straley's grievance for being untimely filed. Mr. Straley, by counsel Andrew J. Katz, filed a brief with this Court, challenging the circuit court's decision. Respondent Putnam County Board of Education ("BOE"), by counsel Rebecca M. Tinder and Christopher Dulany Petersen, filed a response. Petitioner filed a reply brief.

Upon consideration of the standard of review, the parties' briefs, the record presented, and the oral arguments, this Court finds no substantial question of law and no prejudicial error in this case. Thus, we find that a memorandum decision is the appropriate disposition for this case under Rule 21 of the Revised Rules of Appellate Procedure.

Mr. Straley is a school bus driver in Putnam County. In September 2012, Mr. Straley applied to drive a regular full-time bus route for bus #2803, consisting of a morning and an afternoon run. During the cross-country running season, August through October, the route also included an afterschool run, delivering students participating in cross-country from Hurricane Middle School to either Hurricane High School or Valley Park. The afterschool run portion of the bus route was not subject to its own contract. Rather, it was incorporated into the same contract as the morning and afternoon runs. Mr. Straley was awarded the bus route on October 1, 2012, and he drove the route, including the afterschool run during cross-country season, from October 2, 2012, through the remainder of the school year. Both Mr. Straley and the BOE agree that by October 2, 2012, Mr. Straley was aware that the bus route included the afterschool run.

1

Mr. Straley continued driving the route for bus #2803, including the afterschool run, in the fall of 2013. On September 11, 2013, Mr. Straley filed a grievance contending that the afterschool run was an "extracurricular"[1] run that prevented him from bidding on four "extra duty" runs—runs that involve driving a bus for a specific event, e.g., a cross-country championship—because the afterschool run conflicted with the extra duty runs. Mr. Straley also alleged that because the afterschool run is extracurricular, he has not received payment or benefits for such a run. Mr. Straley filed his grievance within fifteen days of being denied the opportunity to bid on an extra duty assignment.

---

[1] Mr. Straley contends that the BOE's inclusion of the afterschool run in his contract violates West Virginia Code § 18A-4-16 (2002). That statute provides, in pertinent part:

(1) The assignment of teachers and service personnel to extracurricular assignments shall be made only by mutual agreement of the employee and the superintendent, or designated representative, subject to board approval. *Extracurricular duties shall mean, but not be limited to, any activities that occur at times other than regularly scheduled working hours*, which include the instructing, coaching, chaperoning, escorting, providing support services or caring for the needs of students, and which occur on a regularly scheduled basis: Provided, That all school service personnel assignments shall be considered extracurricular assignments, except such assignments as are considered either regular positions, as provided by section eight [§ 18A-4-8] of this article, or extra-duty assignments, as provided by section eight-b [§ 18A-4-8b] of this article.

. . . .

(3) The terms and conditions of the agreement between the employee and the board shall be in writing and signed by both parties.

(4) *An employee's contract of employment shall be separate from the extracurricular assignment agreement* provided for in this section and shall not be conditioned upon the employee's acceptance or continuance of any extracurricular assignment proposed by the superintendent, a designated representative, or the board.

W. Va. Code § 18A-4-16 (emphasis added). The circuit court did not make a determination as to whether the afterschool run is an extracurricular run, instead reasoning that "both of the issues raised by the Petitioner would be continuing damages (if there are any) from the previous act by the [BOE] to post and fill the complained of run as one regular run, rather than separately as a regular run and an extracurricular run." In examining Mr. Straley's assignment of error on appeal, we similarly find it unnecessary to decide the merits of the underlying claims to determine whether his grievance was timely filed.

2

A level one conference was held on September 23, 2013, during which the BOE argued that Mr. Straley's grievance was untimely filed. *See* W. Va. Code § 6C-2-3 (2008) ("Any assertion that the filing of the grievance at level one was untimely shall be made at or before level two."). The chief administrator rendered a decision on October 7, 2013, denying Mr. Straley's grievance on the ground that it was not filed within the time frame set forth in West Virginia Code § 6C-2-4(a)(1) (2008). That statute provides:

> Within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date upon which the event became known to the employee, or *within fifteen days of the most recent occurrence of a continuing practice* giving rise to a grievance, an employee may file a written grievance with the chief administrator stating the nature of the grievance and the relief requested and request either a conference or a hearing. The employee shall also file a copy of the grievance with the board. State government employees shall further file a copy of the grievance with the Director of the Division of Personnel.

W. Va. Code § 6C-2-4(a)(1) (emphasis added).

Mr. Straley appealed the chief administrator's decision, and a level three hearing was held on May 15, 2013. The Grievance Board, in its decision dated July 28, 2014, also determined that Mr. Straley's grievance was not filed within the time limit provided in West Virginia Code § 6C-2-4(a)(1).

Mr. Straley appealed the Grievance Board's decision to the Circuit Court of Kanawha County, arguing that the BOE, by requiring him to complete the afterschool run, engaged in a continuing practice under West Virginia Code § 6C-2-4(a)(1). He claimed that his grievance was filed within fifteen days of the most recent occurrence of the continuing practice.

The circuit court did not agree with Mr. Straley's position that the BOE had engaged in a continuing practice. In its November 18, 2015, order, the court concluded:

> The denial of two separate contracts and pay, regular and extracurricular, and the alleged denial of an extra-duty run on August 29, 2013, almost a year later, were but effects of the Board's decision to post, fill and assign the route, as described herein, as one regular run. This is a discreet [sic] event with lasting effects and, as a result, does not extend the timeline during which the grievance must be filed. This is not a continuing practice.

The court distinguished a continuing practice from continuing damage, stating, "[A] discrete event with lasting effects does not constitute a continuing practice." Like the

lower tribunal, the circuit court did not make a decision on the merits of Mr. Straley's grievance.

Mr. Straley now appeals the circuit court's decision. He does not dispute the court's findings of facts; he disputes the circuit court's conclusion that his grievance was untimely filed. He argues that his grievance was timely filed because the BOE engaged in a continuing practice of violating his rights and because he filed his grievance within fifteen days of the most recent occurrence of the BOE's continuing practice. "When reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. pt. 1, *Martin v. Barbour Cty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011). We have held that when reviewing the decision of the Grievance Board, circuit court courts must conduct a plenary review "as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syl. pt. 1, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

Mr. Straley argues that the BOE's "failure to create a separate contract for [his] regular and extra curricular runs constitutes a continuing violation of the law that repeats itself every time Mr. Straley is required to perform the extra curricular portions of his duties." Relying on *Martin v. Randolph County Board of Education*, 195 W. Va. 297, 465 S.E.2d 399 (1995), he declares that his arrangement with the BOE is akin to a "misclassification" constituting a continuing practice under West Virginia Code § 6C-2-4(a)(1). In *Martin*, the Court said:

> The plaintiff contends she has been erroneously classified as service personnel rather than professional personnel. As the ALJ did with the disparate salary claim, she concluded this contention was time barred because the decision to reclassify was made in 1990 and the grievance was not filed until 1992, well past the fifteen-day time period stated in W.Va.Code, 18–29–4(a)(1). We conclude, however, that W.Va.Code, 18–29–2,[2] allows employees to contest a misclassification at any time (although only once). As with a salary dispute, any relief is limited to prospective relief and to back relief from and after fifteen days preceding the filing of the grievance.

195 W. Va. at 311, 465 S.E.2d at 413 (footnote added). Mr. Straley also contends that *Board of Education of the County of Wood v. Airhart*, 212 W. Va. 175, 569 S.E.2d 422 (2002), supports his position that the BOE engaged in a continuing practice. In *Airhart*, the Court determined that uniformity violations, in which a county board of education fails to provide employees performing like assignments with uniform salaries and

---

[2] West Virginia Code § 18-29-4 and -2 were repealed in 2007. West Virginia Code §§ 6C-2-1 *et seq.* contain the current grievance procedures.

benefits, constitute a continuing practice. *See id.* at 18 n.6, 569 S.E.2d at 428 n.6. Mr. Straley compares his situation to a uniformity violation.

The BOE argues in its brief that Mr. Straley's case does not involve a misclassification or a uniformity violation, and that his situation is not comparable to a misclassification or a uniformity violation because "[t]hose recognized violations were extremely narrow and only allowed very specific offenses to be considered continuing practices, because the violative acts of pay discrimination and non-uniformity, resulting from treating the grieving employees less favorably than similarly situated employees, were deemed to be repeated with each non-uniform paycheck." Instead, the BOE directs the Court's attention to *Spahr v. Preston County Board of Education*, 182 W. Va. 726, 391 S.E.2d 739 (1990).

In *Spahr*, five teachers brought grievances in 1986 arguing that they had not received supplemental pay owed to them for work as vocational education teachers, and they sought back pay back to the date the supplemental payments were supposed to have begun—1982. *See id.* at 727, 391 S.E.2d at 740. The superintendent awarded back pay for only the 1986–87 school year, finding that the grievance was untimely filed for the years between 1982 and 1986. *See id.* at 728, 391 S.E.2d at 741. The hearing examiner affirmed this decision. The circuit court reversed, awarding back pay to 1981.[3] *See id.* The court concluded that "the grievance had been timely filed because it was filed within 'fifteen days of the date on which the event became known to the grievant' and 'within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance.'" *Id.*

On appeal, the *Spahr* Court affirmed the circuit court's award of back pay to 1982 based on the discovery rule provision in the statute setting forth the fifteen-day timeline for filing a grievance. *See id.* at 729, 391 S.E.2d at 742; *see also* W. Va. Code § 6C-2-4(a)(1).[4] However, the Court also said:

> Apparently, the circuit judge also relied on the language in W.Va.Code, 18–29–4(a)(1),[5] permitting a grievance to be filed "within fifteen days of the most recent occurrence of a continuing practice" in order to grant the teachers back pay. We do not believe that the legislature

___

[3] The Court's decision notes that awarding back pay to 1981 was clear error because the supplemental pay was not available until 1982.

[4] Neither party argues that the discovery rule in West Virginia Code § 6C-2-4 applies in this case.

[5] West Virginia Code § 18-29-4(a)(1) was repealed in 2007. West Virginia Code § 6C-2-4(a)(1) (2008) now sets forth the deadlines for filing a grievance.

intended this language to cover the present situation. Under the circuit court's interpretation, each new pay check would constitute "the most recent occurrence of a continuing practice," and would permit a grievant to obtain an indefinite accrual of back pay by delaying the filing. The current case, however, involves a single *act*—the inadvertent failure to include the teachers on a list—that caused continuing *damage*, i.e., the wage deficit. Continuing damage ordinarily does not convert an otherwise isolated act into a continuing practice. Once the teachers learned about the pay discrepancy, they had an obligation to initiate the grievance procedure.

*Id.* at 729, 391 S.E.2d at 742 (footnote added).

We find *Spahr* persuasive and agree with the BOE's position. The BOE committed one contested act: It incorporated the afterschool run—an alleged extracurricular run—into the same contract as the main bus run. Under the specific facts of this case, the afterschool run, if an extracurricular run, would not constitute a continuing practice of BOE but would instead constitute a continuing damage from the contested act. Therefore, because Mr. Straley was aware that the afterschool run was included in his contract no later than October 2, 2012, and because he failed to file a grievance challenging the same within fifteen days of that date, his grievance was filed out of time. For this reason, we find no error in the circuit court's decision affirming the dismissal of his grievance, and we affirm the circuit court's November 18, 2015, order.

Affirmed.

**ISSUED: November 16, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISQUALIFIED:**

Justice Margaret L. Workman

**SITTING BY TEMPORARY ASSIGNMENT:**

Judge James P. Mazzone

6