425 S.E.2d 629

Caroline **RICOTTILLI**, Individually and as the Personal Representative of Tara Ricottilli, Plaintiff Below, Appellant,

v.

**SUMMERSVILLE MEMORIAL HOSPITAL**, a Corporation; Dr. Mark Tomsho, Individually; Carla Dorsey, Individually; Marshall Wickline, Individually; Unknown John Doe Defendants; and Charleston Area Medical Center, a Corporation, Defendants Below,

and

**Charleston Area Medical Center, a Corporation, Defendant Below, Appellee.**

No. 20903.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1992.

Decided Dec. 18, 1992.

---

Michael Tomasky, Gary Wigal, Morgantown, for appellant.

Karen Speidel Rodgers, Kay, Casto, Chaney, Love & Wise, Charleston, for appellee.

WORKMAN, Justice:

Caroline Ricottilli appeals from an order of the Circuit Court of Kanawha County entered on June 18, 1991, dismissing her complaint against Appellee Charleston

Area Medical Center ("CAMC"). Having determined that Appellant's cause of action was improperly dismissed below, we reverse the decision of the circuit court.

On March 14, 1989, the six-year-old daughter of Appellant, Tara Ricottilli, was admitted to CAMC as a patient after being transported by helicopter from the Summersville Memorial Hospital in Summersville, West Virginia. Tara died within a matter of hours after her admission to CAMC. Following Tara's death on March 15, 1989, Appellant's husband signed a consent form authorizing a post-mortem examination to be performed on Tara's body. The autopsy was performed by CAMC on March 15, 1989, and liver tissue samples were taken at that time to aid in the determination of the cause of Tara's death.

The results of the autopsy report were not provided to Appellant and her husband until early January 1990, almost ten months after Tara's death. The autopsy report, which is dated January 9, 1990, states that: "The clinical course and morphologic findings of the liver suggest the possibility of an inborn error of metabolism, although the clinical workup of this patient by her local physician did not provide any diagnostic clues." The report further states that "[a]n attempt will be made to perform biochemical studies on frozen liver tissue...." Appellant alleges in her complaint that CAMC has still not reported the results of the tissue sample analysis to her notwithstanding numerous requests. Through the filing of CAMC's brief in this case, it was revealed, apparently for the first time, that no testing of the liver tissue samples was possible because the tissue had been removed post rather than pre-embalming.

On March 12, 1991, Appellant filed a complaint against Summersville Memorial Hospital ("SMH"), Dr. Mark Tomsho, Carla Dorsey, Paula Dorsey, Marshall Wickline, and unknown healthcare providers at SMH and CAMC in the Circuit Court of Kanawha County. Appellant's cause of action against CAMC was predicated on the tort of outrageous conduct or negligent infliction of emotional distress and medical pro-fessional negligence. CAMC filed a Motion to Dismiss and supporting ·memorandum alleging that the outrageous conduct claim was barred by the applicable one-year statute of limitations and that the medical professional negligence claim failed to state a claim due to Appellant's sole reliance on emotional damages to support this cause of action. Without stating any reasons for its decision, the circuit court granted CAMC's Motion to Dismiss with prejudice by order entered June 18, 1991. It is from that order that Appellant now appeals.

Because the trial court did not permit oral argument on CAMC's Motion to Dismiss, this Court has no record from which to identify the grounds upon which the court relied in granting the dismissal. Accordingly, we address both of the arguments cited by CAMC in its Motion to Dismiss to determine whether the circuit court could have properly relied on either of those positions as the basis for its decision. CAMC's Motion to Dismiss states essentially two arguments. First, that the outrageous conduct claim is barred by a one-year statute of limitations and second, that the medical professional negligence claim fails to state a claim based on the lack of any alleged physical damages. Proper analysis of these arguments requires a partial recitation of the averments made by appellant against CAMC in the complaint.

Count eight, which is entitled "Medical Professional Liability Action and the Tort of Outrageous Conduct Against the Charleston Area Medical Center," is the only count of the complaint which contains allegations pertaining to CAMC. The pertinent paragraphs of count eight aver as follows:

51. In providing medical services to Tara Ricottilli and to the plaintiff, CAMC negligently, intentionally and recklessly violated its duty to exercise that degree of care, skill and learning required or expected of a hospital acting as a reasonable or prudent health care provider in performing an autopsy and diagnostic testing in the same or similar circumstances. CAMC failed to provide timely

information concerning the cause of Tara Ricottilli's death, failed to provide any information concerning diagnostic tissue samples sent to other medical facilities for analysis, and failed to provide a timely autopsy report.

52. CAMC knew, or should have known, that its failure to provide the medical services were likely to be the cause of emotional distress, thus, its intentional and reckless conduct was outrageous, intolerable and offensive to generally accepted standards of decency in light of the plaintiff's grief and legitimate, deep concern for the well-being of her surviving children because of the possible genetic cause of Tara Ricottilli's death.

53. As a direct and proximate result of CAMC's negligent, intentional and reckless breach of its duty to provide medical services in the form of autopsy and diagnostic testing results, as well as timely autopsy reports, the plaintiff has suffered severe mental and emotional anguish because her surviving children may be at risk from the same genetic illness that caused Tara Ricottilli's death and the plaintiff does not have the information necessary to seek the appropriate medical care for her surviving children.

### I.

■ We first examine whether this case was properly dismissed under a one-year statute of limitations. CAMC cites this Court's decision in *Rodgers v. Corporation of Harper's Ferry*, 179 W.Va. 637, 371 S.E.2d 358 (1988), in support of its position that Appellant's claim against CAMC for outrageous conduct or intentional infliction of emotional distress is time-barred. In *Rodgers*, we ruled that "personal tort actions such as libel, defamation, intentional infliction of emotional distress, false arrest, false imprisonment, and malicious prosecution take the one-year statute of limitations [set forth in W.Va.Code § 55–2–12(c)

(1981)] because they are excluded from statutory survivability under W.Va.Code § 55–7–8a(a) (1981)...." 179 W.Va. at 640, 371 S.E.2d at 361. Accordingly, Appellant's first cause of action which is predicated on the tort of outrageous conduct or negligent infliction of emotional distress is governed by a one-year statute of limitations.

Given that the one-year limitations period controls the intentional tort of outrageous conduct, the next question becomes on what date did the one-year statute begin to run. CAMC argues that January 9, 1990, the date of the autopsy results, is the only possible date from which to calculate the limitations period. Accordingly, CAMC concludes that because the underlying civil action was not filed until March 12, 1991, the one-year limitations period had elapsed prior to the filing. Appellant contends that CAMC's actions or lack thereof constitute a continuing tort which in turn prevents the statute from running. Conversely, Appellant argued in response to CAMC's Motion to Dismiss that the one-year period does not begin to run until she receives the test results pertaining to the liver tissue samples taken in conjunction with the autopsy performed on Tara.[1]

■ We reject Appellant's continuing tort theory essentially because the concept of a continuing tort requires a showing of repetitious, wrongful conduct. *See Handley v. Town of Shinnston*, 169 W.Va. 617, 289 S.E.2d 201 (1982) (finding continuing tort based on permitting water to regularly flood another's property). Moreover, as this Court explained in *Spahr v. Preston County Board of Education*, 182 W.Va. 726, 391 S.E.2d 739 (1990), a wrongful act with consequential continuing damages is not a continuing tort. *Id.* at 729, 391 S.E.2d at 742. The alleged continuing wrong in this case is the untimely and incomplete autopsy report as well as the failure of CAMC to date to report the results of the tissue sample analysis.[2]

---

**1.** Appellant now knows that no report will be forthcoming based on CAMC's admission in its appellate brief filed on August 26, 1992, that the samples are useless because they were removed following the embalming.

**2.** *See supra*, note 1.

With regard to the dilatoriness of the autopsy report, upon its tender to Appellant on January 9, 1990, or thereabouts, the act of delay was fixed and the only aspect of the claim that could be said to continue is damages, but not the wrongful act itself. *See id.* Similarly, the incompleteness of the autopsy report, insofar as Appellant contends the absence of a specific cause of death renders the report incomplete, as a wrongful act was fixed as of January 9, 1990. With regard to the tissue report, Appellant contends and CAMC does not dispute that she first learned through CAMC's appellate brief, which was filed with this Court on August 26, 1992, that "[b]ecause the liver tissue had been embalmed and no tests could be performed, there are no liver tissue test results to be reported." Given the facts currently before this Court, the applicable statute of limitations with regard to any delay in the issuance of the tissue report would start to run on August 26, 1992. Were this Court to discover or be apprised that the Appellant did have knowledge at an earlier point in time regarding the deficient tissue samples, we would accordingly adjust the onset date for the applicable limitations period. Because Appellant's claims pertaining to the autopsy and tissue reports are fixed acts and do not involve continuing wrongful conduct, the continuing tort theory is inapposite.

■ Having rejected the applicability of the continuing tort theory, we must still resolve when the statutory period began to run on the outrageous conduct claim. CAMC focuses almost entirely on the untimely tender of the autopsy report results on January 10, 1990, as the date for analysis of the limitations issue. Because we do not find Appellant's causes of action limited solely to an untimely autopsy report, we cannot confine the limitations analysis to the date on which the autopsy report was ultimately prepared or reported to Appellant.[3] The allegations against CAMC are

certainly not limited to a claim for dilatoriness in the completion of the autopsy report as demonstrated by the following excerpt from paragraph 53 of the complaint: "[a]s a direct and proximate result of CAMC's negligent, intentional and reckless breach of its duty to provide medical services in the form of autopsy *and diagnostic testing results*, as well as timely autopsy reports...." (emphasis supplied). In addition to alleging damages in connection with the autopsy, Appellant advises CAMC in paragraph 53 that she incurred damages through the breach of its duty to supply "diagnostic testing results." The referenced testing results must refer to the liver tissue tests. Because Appellant did not find out until an admission was made in CAMC's appellate brief that no tissue sample report would be forthcoming due to the embalming error, the one-year limitations period for the alleged outrageous conduct associated with the tissue report did not begin to run until August 26, 1992, well after the civil action had been initiated.

■ With regard to her second cause of action which is grounded in negligence, Appellant relies on the two-year statute of limitations found in the Medical Professional Liability Act ("Act"), West Virginia Code §§ 55–7B–1 to –11 (Supp.1992), to argue that her claim is not time-barred. By definition the Act pertains to liability arising from the provision of "health care" which is defined as "treatment performed or furnished, or which should have been performed or furnished ... on behalf of a patient...." W.Va.Code § 55–7B–2(a). Because the term "patient" is further defined as a "natural person," a deceased individual is necessarily precluded from qualifying as a patient under the Act, and therefore cannot be the basis for a cause of action alleging medical professional liability pursuant to the Act. W.Va.Code § 55–7B–2(e). Accordingly, the two-year statute of limitations pertaining to violations of the Act is inapplicable.

---

**3.** While the autopsy report is dated January 10, 1990, it appears that Appellant may not have learned of its completion until one day later.

■ There is, however, another two-year statute of limitations which does apply. The two-year limitations statute found in West Virginia Code § 55–2–12 (1981), which applies to torts in general, would govern as to the general averments of negligence pertaining to CAMC's breach of its duties following the death of Appellant's daughter. Although CAMC tends to ignore the fact that the complaint includes averments centering on negligence other than the dilatoriness of the autopsy report, a quick review of the allegations contained in paragraphs fifty-one through fifty-three demonstrates that additional averments of negligence are asserted therein. For example, paragraph fifty-one avers that "CAMC negligently ... violated its duty ... in performing an autopsy and diagnostic testing...." As mentioned above, the "diagnostic testing" necessarily includes by reference the liver tissue tests. Accordingly, Appellant has made averments of negligence which center on the duty of care associated with the liver tissue report and by extension, the extraction of the tissue samples necessary to perform the testing on the samples. Because the date of the autopsy performance, March 15, 1989, is the date on which any act of negligence occurred with regard to the tissue sample removal, Appellant was clearly within the two-year filing period applicable to torts in general when she initiated her lawsuit on March 12, 1991, even absent any invocation of the discovery rule. We conclude that the circuit court committed reversible error by relying on CAMC's claim that Appellant's claims were time-barred.

## II.

■ CAMC's second basis for its Motion to Dismiss is Appellant's failure to state a claim of medical professional negligence based on her assertion of emotional damages to support this cause of action. CAMC's argument that "[c]laims for the negligent infliction of emotional distress have not been recognized by this Court, as we have expressed a reluctance to permit recovery for emotional distress in the absence of an intentional tort" was correct at the time of its assertion.[4] *Funeral Serv. By Gregory, Inc. v. Bluefield Community Hosp.*, 186 W.Va. 424, 429, 413 S.E.2d 79, 84 (1991). CAMC further recognized, however, that there is an exception [5] to the rule that liability may not be predicated upon negligence where the damage is limited to mental or emotional disturbance without accompanying physical injury. This exception which is often referred to as the "dead body exception" permits recovery for emotional damages upon proof of the negligent mishandling of a corpse. CAMC argues that because there is no allegation in the complaint that Appellant was impeded in connection with her daughter's burial, the "dead body exception" does not apply.

■ This Court, while it has not yet formally recognized an extension of the "dead body exception," did note in *Whitehair v. Highland Memory Gardens, Inc.*, 174 W.Va. 458, 327 S.E.2d 438 (1985) that:

'In two special groups of cases, however, there has been some movement to ... allow recovery for mental disturbance alone.... The other [second] group of cases has involved the negligent mishandling of corpses. Here the traditional rule has denied recovery for mere negligence without circumstances of aggravation. There are by now, however, a series of cases allowing recovery for negli-

---

**4.** We note the recent holding of this Court, however, that

[a] defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable. To the extent that *Monteleone v. Co–Operative Transit Co.*, 128 W.Va.

340, 36 S.E.2d 475 (1945), is inconsistent with our holding in cases of plaintiff recovery for negligent infliction of emotional distress, it is overruled.

Syl. Pt. 1, *Heldreth v. Marrs*, 188 W.Va. 481, 425 S.E.2d 157 (W.Va.1992).

**5.** There are actually two exceptions to the general rule, but only one of the two is applicable to this case. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 54, at 362 (5th ed. 1984) for a discussion of the other exception.

gent embalming, negligent shipment, running over the body, and the like, without such circumstances of aggravation. *What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.'*

*Id.* at 463, 327 S.E.2d at 443 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 54, at 362 (5th ed. 1984 & Supp.1988) (footnotes omitted and emphasis supplied).

The emotional distress alleged to have been suffered by Appellant arises from the fact that the cause of Tara's death may be genetic in origin and that her two younger children may therefore be predisposed to contract the same disease as they approach the age at which Tara died. Appellant contends that the younger Ricottilli children are unable to receive what is potentially a lifesaving medical diagnosis and treatment because of CAMC's failure to provide complete information regarding Tara's cause of death. Appellant alleges that her independent attempts to pursue genetic testing for her remaining children have not met with success because without the tissue samples or report therefrom, the doctors do not know where to begin to search for the disease.

As we referenced in *Whitehair,* the common basis for extending the "dead body exception" has been facts which indicate " 'an especial likelihood of genuine and serious mental distress' " " 'which serve as a guarantee that the claim is not spurious.' " 174 W.Va. at 463, 327 S.E.2d at 443 (quoting Keeton et al.). Given that this case is still in the early stages of litigation insofar

as no discovery appears to have been taken, we find ourselves in a difficult situation. On the record before us, we cannot conclude that the appropriate guarantees against spuriousness are present sufficient to warrant an extension of the "dead body exception" to this case. However, we do suggest that if the record below ultimately demonstrates facts sufficient to guarantee that the emotional damage claim is not spurious, Appellant may be able to recover damages for her alleged emotional disturbance arising from the alleged negligence surrounding the autopsy and extraction of tissue samples. Accordingly, we hold that an individual may recover for the negligent infliction of emotional distress upon a showing of facts sufficient to guarantee that the emotional damage claim is not spurious. As Prosser & Keeton note,

> [w]here the guarantee can be found, and the mental distress is undoubtedly real and serious, there may be no good reason to deny recovery. But cases will obviously be infrequent in which 'mental disturbance,' not so severe as to cause physical harm, will clearly be a serious wrong worthy of redress and sufficiently attested by the circumstances of the case.

Keeton et al., *supra,* § 52, at 362.

Based on the foregoing opinion, the decision of the Circuit Court of Kanawha County is hereby reversed.

Reversed.