**Robert PETERS, Plaintiff,**

v.

**David Bruce SMALL, Rbl Leasing Corp. and Laneko Engineering Corp., Defendants.**

No. CIV.A.3:05 0598.

United States District Court, S.D. West Virginia, Huntington Division.

Feb. 8, 2006.

Anthony R. Veneri, Veneri Law Offices, Princeton, WV, for Plaintiff.

Avrum Levicoff, Renee N. Burger, Carey L. Cummings, Levicoff Silko & Deemer, Pittsburgh, PA, for Defendants.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

Pending before the Court is the Defendants' Motion In Limine to exclude evi-

dence that the Plaintiff suffered mental distress and/or psychic injury because the Plaintiff witnessed the violent death of a person, unrelated to the Plaintiff, who was involved in the same accident as the Plaintiff. The Court **GRANTS** the Defendants' Motion In Limine because the Plaintiff was unrelated to the victim who died in the accident.

## I. STATEMENT OF FACTS

Plaintiff, Robert Peters, ("Mr. Peters" or "Plaintiff") was injured in an accident allegedly caused by the negligence of David Bruce Small ("Mr. Small" or "Defendant") on July 13, 2003. Complaint ¶ 2. The accident allegedly occurred when Mr. Small failed to maintain control of his tractor trailer as he approached stopped traffic on Interstate 64 near Barboursville, West Virginia. *Id.* Although the Plaintiff was the last vehicle involved in the collision, he did suffer physical injuries, including a lumbar strain. P's Mot. In Opp. To D's Mot. In Lim. 2. In addition to his physical injuries, Plaintiff claims that he has suffered emotional distress and mental anguish following the accident. *Id.* at 3.

At issue in this motion are only the emotional and/or psychic injuries which occurred when Plaintiff left the cab of his tractor trailer after moving it a safe distance from the wreck. *Id.* When Plaintiff walked to the back of his tractor trailer, he saw a scene from a nightmare. Plaintiff saw several cars burning, and witnessed one person burn to death. *Id.* Following this accident, Plaintiff filed a lawsuit seeking damages for both his physical injuries and mental suffering. Complaint ¶ 3.

## II. MOTION IN LIMINE

■ Once the suit was filed, Defendant filed a motion in limine to prevent Plaintiff from introducing evidence that he suffered mental injury from witnessing the death of a stranger who was killed in the same accident that injured Plaintiff. The Defendant's motion in limine must be granted because Plaintiff does not have a viable claim for the negligent infliction of emotional distress (NIED). More specifically, Plaintiff fails to satisfy the West Virginia Supreme Court's criteria for NIED claims under either *Heldreth* or *Marlin*.

■ Despite Plaintiff's best efforts, his NIED claim is barred by the ruling of the West Virginia Supreme Court in *Heldreth v. Marrs*, 188 W.Va. 481, 425 S.E.2d 157 (1992). The West Virginia Supreme Court announced the following test for NIED claims in *Heldreth:*

> A defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, **after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death** as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable.

*Id.* at 482, 425 S.E.2d at 158 (emphasis added). Thus, under the *Heldreth* test, Mr. Peters does not have a NIED claim because he did not witness the death or serious injury of a person closely related to him.

Like *Heldreth*, the West Virginia Supreme Court's ruling in *Marlin* will not avail the Plaintiff. The Court permitted workers, who were exposed to asbestos, to recover for NIED, even when the workers had not developed symptoms of asbestosis in *Marlin v. Bill Rich Construction, Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996). The Court allowed the plaintiffs in *Marlin* to recover for the present fear of contracting a fatal disease, to which they had been exposed, in the future:

In order to recover for negligent infliction of emotional distress based upon the fear of contracting a disease, a plaintiff must prove that he or she was actually exposed to the disease by the negligent conduct of the defendant, that his or her serious emotional distress was reasonably foreseeable, and that he or she actually suffered serious emotional distress as a direct result of the exposure.

*Id.* at 639, 482 S.E.2d at 624. In addition to being a narrow holding, limited to plaintiffs exposed to a disease, the reasoning in *Marlin* will not save Mr. Peters' NIED claim because Mr. Peters' NIED claim was not based on what the accident did to him, but on what he observed happening to others.

The plaintiffs in *Marlin* had a NIED claim because, due to the defendant's negligence, they were exposed to a lethal disease, and, as a result of this exposure, these plaintiffs had an imminent fear of dying from asbestosis. The defendant's negligent conduct, failing to properly remove the asbestos, violated a duty to the plaintiffs in *Marlin*. The direct violation of this duty caused the fear of contracting asbestosis that formed the basis for the plaintiffs' recovery in *Marlin*.

Unlike the defendants in *Marlin*, Mr. Small's negligent conduct, his failure to stop, did not form the basis of Mr. Peters' NIED claim. Mr. Peters' NIED claim is based on events he observed after the conclusion of the accident. In fact, following the accident, he was able to move his truck. Once he had moved his truck, Mr. Peters left his truck and went behind his tractor trailer. Then, after he had moved his truck and gone behind it to look around, he saw the horrors that are the genesis of his NIED claim.

At this crucial moment, when he saw the body burning, Mr. Peters was no longer a victim like the plaintiffs in *Marlin*, but a bystander like the plaintiff in *Heldreth*. As previously discussed, Mr. Peters fails the *Heldreth* test because he was not closely related to the victim. Thus, under both *Heldreth* and *Marlin*, Mr. Peters does not have a NIED claim, and he is barred from introducing evidence of mental anguish that was caused by watching an unrelated person burn to death.

Lastly, Plaintiff, in his attempt to circumvent *Heldreth*, bases his argument on this language from *Marlin:*

A claim for emotional distress without an accompanying physical injury can **only be successfully maintained** upon a showing by the plaintiffs in such an action of facts sufficient to guarantee that the **claim is not spurious** and upon a show that the **emotional distress is undoubtedly real and serious.**

*Id.* at 638, 482 S.E.2d at 623 (emphasis added). Although Plaintiff argues that this passage relieves him of the close family relationship component of *Heldreth*, this Court disagrees because the West Virginia Supreme Court did not mention *Heldreth* when it made this statement. The passage quoted above only means that a plaintiff advancing a NIED claim needs strong evidence to support that claim, regardless of whether the claim is brought under *Heldreth* or *Marlin*.

Plaintiff further claims that, as a result of the emotional trauma he suffered from witnessing the burning death of another, he has suffered physical manifestations of emotional distress. To support this contention, Plaintiff cites *Ricottilli v. Summersville Memorial Hospital*, 188 W.Va. 674, 425 S.E.2d 629 (1992) and *Johnson v. West Virginia University Hospitals*, 186 W.Va. 648, 413 S.E.2d 889 (1991). While both of these cases expanded the scope of liability for NIED claims in West Virginia, they offer little help to Mr. Peters.

*Ricottilli* differs from Plaintiff's case because it involved a botched autopsy of the plaintiffs' daughter.[1] Thus, in *Ricottilli*, the plaintiffs were both related to the victim and the hospital had a duty to correctly perform the autopsy.[2] *Johnson* likewise will not save Plaintiff's NIED claim because the plaintiff in *Johnson* was bitten by a person with AIDS. Because the plaintiff's duties included restraining unruly patients, and it was foreseeable that the plaintiff could be bitten by a patient, the plaintiff in *Johnson* was allowed to recover damages from the hospital.[3]

Although West Virginia recognized that emotional injuries need not be accompanied by physical injuries in *Marlin*, this reasoning will not avail Plaintiff given the facts assumed in this case. In *Marlin*, *Johnson* and *Ricottilli*, the plaintiffs were the direct victims of the defendants' negligence. Unlike Mr. Peters, the plaintiffs in these cases were not bystanders. Therefore, as part of Mr. Peters claim for emotional distress, he will not be permitted to introduce evidence of his emotional distress that resulted from witnessing a person burn to death.

## III. CONCLUSION

The Court grants Defendant's motion in limine because Plaintiff has not advanced a cognizable NIED claim under West Virginia. Mr. Peters does not have a NIED claim as a bystander under *Heldreth* because he did not witness the serious injury or death of a person to whom he was closely related, and he does not have a NIED claim as a victim under *Marlin* to the extent that his emotional distress was a result of Defendant's negligence towards another. Accordingly, the Court **GRANTS** the motion in limine.

The Court **DIRECTS** clerk to send a copy of this order to counsel of record and any unrepresented parties.

---

1. The daughter had died from an unknown condition, and the parents had requested the autopsy because they were afraid this condition could strike their remaining children.

2. This case was an extension of the "dead body" exception, which allow families to recover for the negligent handling of a deceased loved one's corpse. *See Ricottilli*, 425 S.E.2d at 634–635.

3. The reasoning in *Johnson*, that the plaintiff could recover for being bitten by an AIDS patient, formed the basis for the ruling in *Marlin*, which let plaintiffs recover for the present fear of contracting asbestosis after they had been negligently exposed to asbestos.