22-0439, *SER Charleston Area Medical Center, Inc., dba Women & Children's Hospital v. Hon. Miki J. Thompson, Judge of the Circuit Court of Mingo County, Angela Lester, Denny Seth Lester, Mounts Funeral Home, Inc., and Nicole Cline*

FILED

**June 12, 2023**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Hutchison, J., dissenting:

Plaintiffs Angela and Denny Seth Lester's child died of natural causes prior to delivery at Charleston Area Medical Center d/b/a Women and Children's Hospital ("CAMC"), CAMC took possession of the stillborn child and, according to the amended complaint, engaged in actionable misconduct including negligently mishandling the child's remains by placing them in the backseat of a Ford Fusion alongside the funeral home driver's "Sam's Club purchases[;]" allowing an unauthorized person (i.e., the driver's husband) to be involved with the transportation and handling of the infant's corpse; and negligently supervising the employee who placed the child's remains there.[1] Even under

---

[1] As the result of CAMC's alleged negligence, the plaintiffs allege that the husband of CAMC's co-defendant, funeral home driver Nicole Cline,

> outrageously posted a video on several different social media outlets (hereinafter "the Cline Video"), describing the process of loading the infant's body into their private vehicle, transporting and embalming the Plaintiffs' infant child's corpse and wrongfully suggested the infant corpse was the result of the Plaintiff, Angela Lester terminating her pregnancy.

> The Cline video was shared numerous times and was viewed by a large number of people in the Plaintiffs' community throughout Mingo County and Southern West Virginia.

> . . . .

1

the most tortured interpretation of the amended complaint, the alleged tortious acts were not committed by CAMC "in the context of the rendering of 'health care'"[2] and so the provisions of the Medical Professional Liability Act ("MPLA") do not apply. Because the majority has concluded otherwise, I respectfully dissent.

I believe the majority approached this case with the single-minded aim of bringing the plaintiffs' claims within the purview of the MPLA despite the underlying facts[3] and simply because a health care facility is a named defendant. In doing so, the majority has unfairly contorted the statutory language to meet a particular end. By its very definition, "medical professional liability" under the MPLA means that the injury for which damages are sought must have resulted from a tort "based on health care services rendered, or which should have been rendered, by a health care provider or health care facility *to a patient*." W. Va. Code § 55-7B-2(i), in part (emphasis added). The majority correctly

---

The mishandling of [the plaintiffs'] infant son's body by the Defendants and the Cline Video, made possible by the Defendants' reckless behavior, caused significant mental anguish, pain and suffering to your Plaintiffs as they were forced to relive the death of their infant son in a very public manner.

[2] Syl. Pt. 4, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007) ("The failure to plead a claim as governed by the Medical Professional Liability Act, West Virginia Code § 55-7B-1, et sq., does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e) (2006) (Supp. 2007), the Act applies regardless of how the claims have been pled.")

[3] *See id.* at 702–03, 656 S.E.2d at 453–54 ("the determination of whether a cause of action falls within the MPLA is based upon the factual circumstances giving rise to the cause of action").

acknowledges that "[b]ecause the term 'patient' is . . . defined as a 'natural person,' a deceased individual is necessarily precluded from qualifying as a patient under the [MPLA], and therefore cannot be the basis for a cause of action alleging medical professional liability pursuant to" that statute. *Ricottilli v. Summersville Mem'l Hosp.*, 188 W. Va. 674, 678, 425 S.E.2d 629, 633 (1992). Ignoring that the alleged misconduct in this case strictly involves CAMC's negligence as to a *non-patient* (i.e., a stillborn child), the majority nonetheless decided that Mrs. Lester "satisfies the definition of 'patient' for the purposes of the MPLA" because the alleged mishandling of the child's corpse occurred following her delivery of the child at CAMC. By tethering the plaintiffs' claims of negligence against CAMC to Mrs. Lester's status as a "patient" for the sole purpose of bringing this case within the purview of the MPLA, the majority has gone too far. *See* Syl. Pt. 9, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019) ("'Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938).").

The absurdity of the majority's holding that Mrs. Lester is the "'patient' for the purposes of the MPLA" is demonstrated by the MPLA's pre-suit notice requirements themselves. In particular, the MPLA's screening certificate of merit requirements provide that a plaintiff must secure a medical expert who "is engaged or qualified in a medical field in which the practitioner has experience and/or training in diagnosing or treating injuries or conditions similar to those of the patient." W. Va. Code § 55-7B-7(a)(6). Common

3

sense dictates that a practitioner in the field of obstetrics could not possibly offer any expertise as to whether CAMC's employee acted negligently by placing the remains of a stillborn child in the back seat of a private vehicle among a pile of groceries and permitting the driver and her husband to then transport the remains away from the hospital premises. The reality is that CAMC's alleged misconduct – having absolutely nothing to do with the provision of health care – is within the experience and judgment of the average juror. It is simply unimaginable that any specialized medical knowledge is required for a jury to understand the simple allegations of the plaintiffs' amended complaint. Because I believe that the special protection afforded health care providers under the MPLA does not – and should not – extend to the alleged actions of CAMC in this case, I respectfully dissent.