IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 23-135

_____

FILED

**May 21, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA DEPARTMENT OF HEALTH,
OFFICE OF THE CHIEF MEDICAL EXAMINER, and
ALLEN R. MOCK, M.D.
Defendants Below, Petitioners

v.

DR. PATSY CIPOLETTI, JR.,
Administrator of the Estate of June Cipoletti,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Joanna I. Tabit, Judge
Civil Action No. 19-C-926

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: May 1, 2024
Filed: May 21, 2024

Kelly C. Morgan, Esq.                     Richard Lindsay, II, Esq.
Kristen V. Hammond, Esq.                  Richard Lindsay, Esq.
Bailey & Wyant, PLLC                      Tabor Lindsay & Associates, PLLC
Charleston, West Virginia                 Charleston, West Virginia
Counsel for Petitioners                   Counsel for Respondent

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 1, *W. Va. Bd. of Ed. v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015).

2.      "When a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*." Syl. Pt. 4, in part, *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998).

3.      "If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby." Syl. Pt. 4, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

4.      "In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12A-1, *et seq*., and against an officer of that department acting within the scope of his or her employment, with respect to the

discretionary judgments, decisions, and actions of the officer." Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995)

5. "By definition, a deceased individual does not qualify as a 'patient' under the Medical Professional Liability Act ('Act'), West Virginia Code §§ 55-7B-1 to -11 (Supp.1992), and therefore cannot be the basis for a cause of action alleging medical professional liability pursuant to the Act." Syl. Pt. 1, *Ricottilli v. Summersville Memorial Hosp.*, 188 W. Va. 674, 425 S.E.2d 629 (1992).

6. "The [MPLA] permits a third party to bring a cause of action against a health care provider for foreseeable injuries that were proximately caused by the health care provider's negligent treatment of a tortfeasor patient." Syl. Pt. 5, *Osborne v. U.S.*, 211 W. Va. 667, 567 S.E.2d 677 (2002).

ARMSTEAD, Chief Justice:

Petitioners, the West Virginia Department of Health,[1] Office of the Chief Medical Examiner,[2] and Dr. Allen R. Mock (collectively "Petitioners"), appeal the Circuit Court of Kanawha County's February 9, 2023, order denying their motion to dismiss. Respondent, Dr. Patsy Cipoletti, Jr., ("Respondent"), administrator of the estate of his deceased wife, June Cipoletti ("decedent" or "Mrs. Cipoletti"), filed a complaint against Petitioners asserting that they violated the West Virginia Medical Professional Liability Act ("MPLA")[3] by negligently determining Mrs. Cipoletti's cause of death.

On appeal, Petitioners argue that Respondent may not maintain an MPLA claim because (1) the decedent does not meet the definition of "patient" under the MPLA; and (2) Petitioners did not provide medical services or treatment to a patient or a person

---

[1] Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies: the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. The Office of the Chief Medical Examiner is now a part of the Department of Health. *See* W. Va. Code § 5F-2-1a(c)(1)(C).

[2] Respondent named the "Office of the West Virginia Medical Examiner" as a defendant. Under West Virginia Code § 61-12-3, the Chief Medical Examiner directs the "Office of Chief Medical Examiner." In Petitioners' motion to dismiss filed in the circuit court, they noted "[n]ow comes, Defendant, . . . Office of the Chief Medical Examiner (improperly identified [by Respondent] as the Office of the West Virginia State Medical Examiner)[.]" It appears that neither party moved to correct the style of the case to properly identify the "Office of Chief Medical Examiner," rather than the "West Virginia Medical Examiner." We sua sponte correct the style of the case and refer to this Respondent as the Office of Chief Medical Examiner ("OCME").

[3] West Virginia Code §§ 55-7B-1 to -12.

resulting in injury or death. Based on their argument that Respondent cannot maintain an MPLA claim, Petitioners assert that they are entitled to qualified immunity from Respondent's lawsuit.

After review, we agree with Petitioners. Therefore, we reverse the circuit court's order and remand this matter to the circuit court for entry of an order granting Petitioners' motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent's wife, Mrs. Cipoletti, died on January 9, 2017. Dr. Mock, the OCME's Chief Medical Examiner, performed an autopsy. Dr. Mock's subsequent report, entitled "Report of Death Investigation and Post-Mortem Examination Findings," provides:

> It is my opinion that June Burford Cipoletti, a 59-year-old woman, died as a result of right temporoparietal cerebral infraction due to atherosclerotic cardiovascular disease with contributory hypertensive cardiomegaly and dilated cardiomyopathy with acute on chronic alcohol intoxication.[4] The potential cardiotoxicity associated with acute ethanol intoxication cannot be excluded as contributory.
>
> **Manner of Death**: The circumstances surrounding death, as determined by the death investigation and post-mortem examination, indicate that the manner of death is accident.

Following this report and the entry of Mrs. Cipoletti's death certificate memorializing these findings, Respondent filed the instant lawsuit alleging that Petitioners

---

[4] The decedent's toxicology report showed a blood alcohol level of 0.14.

"negligently, carelessly, willfully, wantonly, recklessly without discretion, in violation of the West Virginia Medical Professional Liability Act §55-7B-1 et seq., and in deviation from the applicable standards of medical care, determined the cause of death of June Cipoletti and negligently filled out and signed her death certificate." Respondent's main contention is that Petitioners erred by finding that alcohol contributed to Mrs. Cipoletti's death. Respondent also asserts that the death should have been categorized as "natural" rather than "accidental."

Respondent's complaint includes two specific allegations explaining how Petitioners were "negligent in their determination" of Mrs. Cipoletti's cause of death:

> a. Including on the official Death Certificate in the CAUSE OF DEATH section PART II[:] "[]Acute on Chronic Alcohol Intoxication" as "contributing to death" even though there is no evidence for such a conclusion on the record; and
>
> b. Including in Part 30d Describe How Injury Occurred[:] "overingested [sic] beverage alcohol"—even though there is no evidence in the record that alcohol caused any injury found; and
>
> c. Were otherwise negligent.

Respondent's complaint provides that "as a direct and proximate result of the negligence" of Petitioners, Respondent and his family have suffered "great mental pain and anguish." The complaint seeks (1) the correction of the "erroneous death certificate," (2) legal costs, (3) monetary compensation for "the medical pain and anguish" suffered by [Respondent], and (4) punitive damages against Dr. Mock.

3

Petitioners filed a motion to dismiss, arguing that Respondent had not asserted a proper cause of action under the MPLA because (1) the decedent does not meet the definition of a patient under the MPLA; (2) Petitioners do not meet the definition of health care providers under the MPLA; and (3) Petitioners did not provide medical services or treatment to a patient resulting in injury or death. Because Respondent's complaint did not state a proper claim under the MPLA, Petitioners argued that they have qualified immunity from Respondent's lawsuit because the only remaining claim is for common-law negligence.

The circuit court denied the motion to dismiss. It determined that the MPLA applied and that Petitioners therefore were not entitled to qualified immunity:

> [Respondent] seeks recovery under and up to the limits of the State's liability insurance coverage. Dr. Mock's conduct complained of by [Respondent] is within the sphere of his profession as a medical doctor, i.e., [Respondent] claims that Dr. Mock was negligent in his medical action and provision of medical care. As such, Dr. Mock's actions clearly fall under and are governed by the West Virginia Medical Professional Liability Act (MPLA), W.Va. Code § 55-7B-1, et seq. Further, [Respondent] alleges a breach of the standard of care in accordance with W.Va. Code § 55-7B-1 et seq., by satisfying the pre-suit requirements of W.Va. Code § 55-7B-1 et seq., and therefore the conduct complained of is alleged to be a violation of statutory law thereby removing from Dr. Mock the immunity he seeks at this juncture.

Following entry of the circuit court's order, Petitioners filed this appeal.

## II. STANDARD OF REVIEW

Petitioners appeal the circuit court's denial of their motion to dismiss. This Court has held that "[a] circuit court's denial of a motion to dismiss that is predicated on

4

qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 1, *W. Va. Bd. of Ed. v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015). Additionally, we have held that "[w]hen a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*." Syl. Pt. 4, in part, *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998). Furthermore, "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff [], and its allegations are to be taken as true." *Marple*, 236 W. Va. at 660, 783 S.E.2d at 81 (quotations and citation omitted). Finally, we have recognized that "dismissal for failure to state a claim is only proper where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint." *Id.* (citation omitted).[5] With these standards in mind, we proceed to consider the parties' arguments.

---

[5] We emphasize that Petitioners have appealed the circuit court's ruling denying their Rule 12(b)(6) motion to dismiss. While Respondent invites this Court to rely on discovery that has taken place since the circuit court's ruling, we decline this invitation. As this Court has held:

> Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith.

Syl. Pt. 4, in part, *U.S. Fid. & Guar. Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965) (*overruled on other grounds by Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427, 211

(continued . . .)

## III. ANALYSIS

Petitioners argue that they are entitled to qualified immunity from Respondent's lawsuit. According to Petitioners, the allegations contained in Respondent's complaint "are insufficient to state a claim under the MPLA against Petitioners as they did not provide any health care to a patient resulting in the injury or death of the decedent." Because the MPLA does not apply, according to Petitioners, "only a mere negligence claim remains which is barred by the doctrine of qualified immunity[.]"

Upon review, we agree with Petitioners' argument. Our analysis begins with a review of qualified immunity. We then explain our conclusions that (1) Petitioners' actions were discretionary functions; (2) Respondent has not set forth a viable MPLA claim; and (3) without a viable MPLA claim, Petitioners are entitled to qualified immunity.[6]

---

S.E.2d 674 (1975)). *See also* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[3], at 354 (3d ed. 2008) ("Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b)(6)."). In the present case, the circuit court did not consider any matters outside of the pleadings. Thus, we similarly confine our review to the precise issue the circuit court ruled upon, i.e., whether Respondent's complaint is sufficient to withstand Petitioners' motion to dismiss.

[6] Petitioners raised two additional assignments of error, arguing that the circuit court erred by (1) applying the notice pleading standard instead of the heightened pleading standard; and (2) ruling that Respondent's notice of claim and certificate of merit were sufficient. Based on our conclusion that Petitioners are entitled to qualified immunity and that the MPLA does not apply, we need not address these additional assignments of error.

6

**A. Qualified Immunity**

This Court has provided that when a defendant raises the issue of qualified immunity in a motion to dismiss, the circuit court must look to our qualified immunity body of law and examine whether qualified immunity applies on a "case-by-case basis."[7] We recently summarized our qualified immunity jurisprudence as follows:

> Qualified immunity is an immunity from suit afforded to public officials and State agencies under certain conditions. It flows not from constitutional, sovereign immunity but is a judge-made doctrine intended to allow officials to do their jobs and to exercise judgment, wisdom, and sense without worry of being sued. A public official or State agency may claim to be qualifiedly immune from suit only when the acts or omissions which give rise to the suit involve discretionary governmental functions. If they do, then the public official or State agency is entitled to qualified immunity *unless* the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known.

*W. Va. Div. of Corr. & Rehab. v. Robbins*, 248 W. Va. 515, 524, 889 S.E.2d 88, 97 (2023) (internal citation, quotation and footnotes omitted).

This Court has held that both a public officer and a State agency are entitled to qualified immunity from a negligence claim under the following circumstances:

> If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, *he is not liable for negligence* or other error in the

---

[7] *See* Syl. Pt. 9, in part, *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W. Va. 161, 483 S.E.2d 507 (1996) ("The existence of the State's immunity [] must be determined on a case-by-case basis.").

making of that decision, at the suit of a private individual claiming to have been damaged thereby.

> In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity *bars a claim of mere negligence* against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12A-1, *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

Syl. Pts. 4 and 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995) (Emphasis added).

If a court determines that the "governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions," the next step is for the court to decide

> whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Syl. Pt. 11, in part, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

This Court summarized the foregoing authority into a six-step inquiry a circuit court should undertake when considering a claim of qualified immunity:

> [The court should determine] whether (1) a state agency or employee is involved; (2) there is an insurance contract waiving the defense of qualified immunity; (3) the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 et seq. would apply; (4) the

8

matter involves discretionary judgments, decisions, and/or actions; (5) the acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive; and (6) the State employee was acting within his/her scope of employment.

*W. Va. Reg'l Jail & Corr. Facility Auth. v. Est. of Grove,* 244 W. Va. 273, 283, 852 S.E.2d 773, 783 (2020).

In the present case, the circuit court and the parties focused on the fifth step, whether Petitioners' alleged acts constituted a violation of "clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive." *Id.* However, before addressing this step, we must first consider whether Petitioners' actions constituted discretionary functions.[8]

**B. Discretionary Functions**

Respondent asserts that Petitioners' negligence stems from their determination of the cause and manner of Mrs. Cipoletti's death. Petitioners note that "Dr. Mock, as the Chief Medical Examiner, is provided full discretion in determining the cause and manner of death . . . Dr. Mock is also provided full discretion in determining if an autopsy should be conducted." Thus, Petitioners assert that the complained of conduct, determining the cause and manner of death, are discretionary functions. Respondent's brief

---

[8] There is no dispute that a state agency or employee is involved, that no insurance policy waives the defense of qualified immunity, and that the West Virginia Governmental Tort Claims and Insurance Reform Act would not apply. Therefore, we proceed to consider the fourth and fifth steps of our qualified immunity analysis.

9

to this Court does not dispute that Petitioners complained of actions are discretionary functions.[9]

Our review confirms that these functions, performing an autopsy and determining the cause and manner of death, are discretionary. *See* W. Va. Code § 61-12-3(d)(1)-(2) ("The Chief Medical Examiner shall be responsible to the secretary in all matters except that the Chief Medical Examiner shall operate with independent authority for the purposes of: (1) The performance of death investigations conducted pursuant to § 61-12-8 of this article; (2) The establishment of cause and manner of death[.]"); W. Va. Code § 61-12-10(a) ("If in the opinion of the chief medical examiner . . . it is advisable and in the public interest that an autopsy be made . . . an autopsy shall be conducted by the chief medical examiner or his or her designee, by a member of his or her staff, or by a competent pathologist designated and employed by the chief medical examiner under the provisions of this article.").

Based on the foregoing, we find that Petitioners' actions were discretionary. Because their actions were discretionary, we proceed to examine whether Petitioners' actions constituted a violation of "clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent,

---

[9] We note that Respondent's complaint provides that Petitioners' actions were committed "recklessly without discretion[.]" However, neither the complaint, nor Respondent's brief to this Court, explains how the complained of actions were performed "without discretion."

malicious, or oppressive." *W. Va. Reg'l Jail & Corr. Facility Auth. v. Est. of Grove,* 244 W. Va. at 283, 852 S.E.2d at 783.

**C. MPLA Claim**

The circuit court found that Dr. Mock's conduct fell under and was governed by the MPLA, thus depriving Petitioners of qualified immunity.[10] Petitioners argue that this finding was erroneous and assert that Respondent may not maintain an MPLA claim because the MPLA requires a health care provider to provide "health care" to a "patient" resulting in "the injury or death of a person." Petitioners assert that conducting an autopsy on a decedent and completing a death certificate listing the manner and cause of death does not fall within these parameters.

In reviewing this issue, our two intertwined inquiries are (1) whether the decedent was a patient under the MPLA; and (2) whether Petitioners provided medical services or treatment resulting in injury or death. Resolving these questions requires us to examine the MPLA. This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587,

---

[10] Respondent relies on the MPLA as the basis for his position that he has alleged the violation of a "clearly established statutory right" to defeat Petitioners' claim to qualified immunity. Because we find that Respondent has not set forth a viable MPLA claim, we need not analyze whether the assertion of a valid MPLA claim would be sufficient to remove such claims from the scope of qualified immunity.

466 S.E.2d 424, 438 (1995). Additionally, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W. Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted).

We focus our analysis on three definitions contained in the MPLA: "medical professional liability," "health care," and "patient." The phrase "medical professional liability"

> means any liability for damages *resulting from the death or injury of a person* for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility *to a patient*. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

W. Va. Code § 55-7B-2(i) (Emphasis added).

The phrase "health care" is defined in the MPLA as follows:

(e) "Health care" means:

(1) Any act, service, or treatment provided under, pursuant to, or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis, or treatment;

(2) Any act, service, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional *for, to, or on behalf of a patient during the patient's medical care,*

12

> *treatment, or confinement*, including, but not limited to, staffing, medical transport, custodial care, or basic care, infection control, positioning, hydration, nutrition, and similar patient services[.]

W. Va. Code § 55-7B-2(e), in part (Emphasis added).

The MPLA defines the term "patient" as "*a natural person* who receives or should have received health care from a licensed health care provider under a contract, expressed or implied." W. Va. Code § 55-7B-2(m) (Emphasis added). Consistent with the foregoing definition, this Court has held that a decedent cannot be a "patient" under the MPLA. In *Ricottilli v. Summersville Memorial Hospital*, 188 W. Va. 674, 425 S.E.2d 629 (1992), we held that "[b]y definition, a deceased individual does not qualify as a 'patient' under the Medical Professional Liability Act ('Act'), West Virginia Code §§ 55-7B-1 to -11 (Supp.1992), and therefore cannot be the basis for a cause of action alleging medical professional liability pursuant to the Act." Syl. Pt. 1, *id.*

Respondent asserts that *Ricottilli's* holding does not bar application of the MPLA in the present case because (1) the Legislature has broadened the MPLA since *Ricottilli* was decided and (2) a plaintiff does not have to be a "patient" for the MPLA to apply. We address each of these arguments in turn and explain our conclusion that under the plain language of the MPLA and our *Ricottilli* holding, the decedent, Mrs. Cipoletti, cannot be the basis for a cause of action under the MPLA.

13

Respondent correctly notes that the Legislature has expanded the MPLA since *Ricottilli* was decided in 1992.[11] However, the Legislature has not changed the definition of "patient" during that time, nor has it broadened the MPLA such that a decedent may be the basis of an MPLA cause of action. Further, this Court examined our holding in *Ricottilli* in *State ex rel. Charleston Area Med. Ctr., Inc. v. Thompson*, 248 W. Va. 352, 888 S.E.2d 852 (2023), a case brought by a mother against a hospital alleging that it had mishandled her stillborn fetus's remains. One of the issues in *Thompson* was whether the mother's claim involved a "patient" under the MPLA. This Court found that there was a valid MPLA claim because the mother, rather than the decedent stillborn fetus, satisfied the definition of "patient" under the MPLA. *Id.* at 358, 888 S.E.2d at 858. Importantly, however, *Thompson* did not overrule or cast doubt on *Ricottilli's* holding that a decedent could not qualify as a patient under the MPLA or constitute the basis for an MPLA claim.

Next, we agree with Respondent's assertion that this Court has recognized that a plaintiff's status as a non-patient "does not preclude application of the MPLA." *Brown v. Ohio Valley Health Servs. & Educ. Corp.*, No. 20-0156, 2021 WL 2023532, at *3 (W. Va. May 20, 2021) (memorandum decision). In syllabus point five of *Osborne v. United States*, 211 W. Va. 667, 567 S.E.2d 677 (2002), we held that the MPLA "permits a third party to bring a cause of action against a health care provider for foreseeable injuries

---

[11] *See State ex rel. W. Va. Univ. Hosps., Inc. v. Scott*, 246 W. Va. 184, 194, 866 S.E.2d 350, 360 (2021) (noting the "changing landscape of medical malpractice cases" since the Legislature's 2015 amendments broadening the MPLA).

14

that were proximately caused by the health care provider's negligent treatment of a tortfeasor patient." The Court in *Osborne* noted that in defining "medical professional liability," the Legislature "employed both the word 'person'[12] and the term 'patient." *Id.* at 672, 567 S.E.2d at 682. The Court concluded that this distinction made it "apparent that the Legislature intended to allow individuals generally to recover damages for injuries attributable to medical professional liability regardless of whether they are actually 'patients.'" *Id.* at 674, 567 S.E.2d at 684.

The crux of the foregoing was that the MPLA may apply to "petitioners' claims, though petitioners are not patients, because *they have stated claims for medical professional liability*." *Brown v. Ohio Valley Health Servs. & Educ. Corp.*, 2021 WL 2023532, at *3 (Emphasis added). Thus, whether a plaintiff is a patient or a non-patient, to assert a viable MPLA claim, the plaintiff must state a claim for "medical professional liability" as that phrase is defined in the MPLA. To assert a viable claim for "medical professional liability" under the MPLA, a plaintiff must establish that the health care provider is liable "for damages resulting from the death or injury of *a person*[.]" W. Va. Code § 55-7B-2(i) (Emphasis added). This requirement is fatal to Respondent's argument.

In the present case, Petitioners did not provide health care services to either a "patient" or a "person" resulting in death or injury. Instead, Dr. Mock performed an

---

[12] Relevant to the instant case, the Court in *Osborne* recognized that "[t]he natural and obvious meaning of the word 'person' is a *living human being*." *Id.* at 674, 567 S.E.2d at 684. (Internal quotations and citations omitted, emphasis added).

15

autopsy on a decedent and completed a report and a death certificate listing the manner and cause of death. Because Petitioners did not provide health care services to a patient or a person resulting in injury or death, Respondent has not stated a claim for "medical professional liability" under the MPLA.

Accordingly, we find that Respondent has failed to plead a viable MPLA cause of action against Petitioners and that the circuit court erred by concluding that "Dr. Mock's actions clearly fall under and are governed by" the MPLA. With no viable MPLA claim, we proceed to examine whether Petitioners are entitled to qualified immunity from Respondent's lawsuit.[13]

---

[13] During oral argument, Respondent's counsel asserted that even if the MPLA did not apply, Petitioners' conduct was "malicious" and that Petitioners are therefore not entitled to qualified immunity. This Court has held that qualified immunity does not apply if the acts or omissions at issue "are otherwise fraudulent, malicious, or oppressive." Syl. Pt. 11, in part, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. Respondent's complaint does not assert that Petitioners' conduct was "malicious," nor does it allege "fraudulent" or "oppressive" conduct. Respondent's complaint clearly and specifically asserts two claims: (1) negligence and (2) a violation of the MPLA. Respondent's complaint contains a general, factually unsupported allegation that Petitioners "willfully, wantonly, [and] recklessly without discretion" determined the decedent's cause of death. The complaint offers no supporting factual allegations indicating how the autopsy and Dr. Mock's subsequent determination of the manner and cause of Mrs. Cipoletti's death were made "willfully, wantonly, [and] recklessly without discretion." Instead, Respondent's only specific allegation is that Dr. Mock *negligently* concluded that alcohol may have been a contributing factor in Mrs. Cipoletti's death. This Court has found that "[g]eneral allegations . . . are insufficient," and a complaint must assert more than "mere sketchy generalizations of a conclusive nature unsupported by operative facts." *Newton v. Morgantown Mach. & Hydraulics of W. Va., Inc.*, 242 W. Va. 650, 654, 838 S.E.2d 734, 738 (2019) (quotations and citation omitted). Rather, "a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*,

(continued . . .)

**D. Negligence Claim**

Because Respondent has not set forth a viable MPLA claim, the only remaining claim contained in Respondent's complaint is that Petitioners "were negligent in their determination of the cause of death" of Mrs. Cipoletti. The complaint provides two specific instances of this negligence, both involving Dr. Mock's conclusion that alcohol could have contributed to Mrs. Cipoletti's death. Following these two specific instances of alleged negligence, the complaint includes a conclusory statement that Petitioners "were otherwise negligent." Further, the complaint provides that the damages suffered by Respondent resulted from "the *negligence* of the defendants . . . in *negligently* preparing the erroneous death certificate and autopsy report[.]" (Emphasis added).

We have already concluded that Petitioners' actions in this matter constituted discretionary functions. This Court has held that both a public officer and a State agency are entitled to qualified immunity from a negligence claim under such circumstances. *See* Syl. Pt. 4, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 ("If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the

---

194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995). While a "plaintiff's burden in resisting a motion to dismiss is a relatively light one," to overcome the motion a plaintiff must "at a minimum . . . set forth sufficient information to outline the elements of [the] claim," and if the complaint "fails to do so, dismissal is proper." *Price v. Halstead*, 177 W. Va. 592, 594, 355 S.E.2d 380, 383 (1987). Based on the foregoing, we find that Respondent's complaint has not sufficiently asserted that Petitioners' conduct was "fraudulent, malicious, or oppressive" to deny Petitioners' qualified immunity.

17

scope of his duty, authority, and jurisdiction, *he is not liable for negligence or other error in the making of that decision*, at the suit of a private individual claiming to have been damaged thereby.") (Emphasis added); Syl. Pt. 6, in part, *id.* ("In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity *bars a claim of mere negligence against a State agency* . . . and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.") (Emphasis added).

Based on the foregoing, we find that Petitioners alleged negligent actions were discretionary and not in violation of any "clearly established statutory or constitutional rights or laws" and are not "otherwise fraudulent, malicious, or oppressive." *W. Va. Reg'l Jail & Corr. Facility Auth. v. Est. of Grove*, 244 W. Va. at 283, 852 S.E.2d at 783. Therefore, Petitioners are entitled to qualified immunity from Respondent's lawsuit.

## IV. CONCLUSION

As set forth above, we find that the circuit court erred by denying Petitioners' motion to dismiss. Therefore, we reverse the circuit court's February 9, 2023, order and remand this matter to the circuit court with directions for it to grant Petitioners' motion to dismiss.

Reversed and Remanded with Directions.

18